808 So.2d 746 (2001)
Edith BUTLER
v.
Jacquelyn D. ALLEN and USAgencies Casualty Insurance Company, Inc.
No. 2000 CA 1726.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
Writ Denied February 1, 2002.
*747 Johnnie L. Matthews, Baton Rouge, for Plaintiff-Appellee Edith Butler.
Michael L. Hyman, Baton Rouge, for Defendant-Appellant USAgencies Casualty Insurance Co., Inc.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
CARTER, Chief Judge.
This appeal presents a single issue of first impression for our review: Can an injured party recover medical expenses under "economic-only" (EO) underinsured/uninsured motorist (UM) insurance if the underlying liability insurance coverage is sufficient to cover her economic damages but insufficient to cover the total damages she sustained? For the following reasons we conclude that the injured party can recover under the facts of this case.
The petition alleges that on April 27, 1999, Edith Butler (plaintiff) was riding as a guest passenger in a car owned and driven by Charles Powell when she was injured in a rear-end collision caused by Jacquelyn D. Allen (defendant). Plaintiff brought suit for damages against defendant and her liability insurer, USAgencies Casualty Insurance Company, Inc. (USAgencies). She also sued USAgencies in its capacity as UM insurer for the vehicle in which she was a guest passenger.
Powell selected EO UM coverage with $10,000 limits. The pertinent part of the form signed by the insured provided: "I select Economic-Only UMBI Coverage which will compensate me only for my economic losses with the same limits as my Bodily Injury Liability Coverage." "UMBI" is defined on the form as uninsured/underinsured motorist bodily injury coverage. "Economic losses" are defined on the form as "those [losses] which can be measured in specific monetary terms including, *748 but not limited to, medical costs, funeral expenses, lost wages, and out of pocket expenses."
Before trial, plaintiff settled her claim against defendant and her liability insurer for the underlying liability policy limits of $10,000. Plaintiff released defendant and USAgencies, in its capacity as defendant's liability insurer, but reserved her right to proceed against USAgencies as the EO UM coverage provider for the vehicle in which she was a guest passenger.
At trial, the parties stipulated that plaintiff's medical expenses in connection with her injuries sustained in the accident were $4,658.76. USAgencies refused to pay under its EO UM coverage, contending that plaintiff's economic loss of $4,658.76 did not exceed the underlying liability policy limits of $10,000, and that therefore the EO UM coverage did not apply.
The trial court rejected USAgencies' argument, stating that plaintiff had received "extensive injury," including bulging disks, and that the $10,000 she received in settlement from the primary liability carrier was "really not sufficient to cover pain and suffering for that type of injury." The court concluded that USAgencies' EO UM coverage was applicable in this instance, and rendered judgment in favor of plaintiff for $4,658.76. USAgencies appeals.
This is a question of law requiring a de novo review. Appellate review of questions of law consists of a simple review of the correctness of the trial court's decision as a matter of law. Deville v. South Central Industries, Inc., 99-1377, p. 3 (La.App. 1st Cir.6/23/00), 764 So.2d 335, 337, writ denied, 00-2619 (La.11/17/00), 774 So.2d 976.
The issue before this court is whether the responsible driver in this accident was underinsured so as to trigger the EO UM coverage available to plaintiff. In the absence of jurisprudence that directly addresses this issue, we must carefully examine the statutory language, the legislative intent, and the applicability of the statute to the instant case.
Louisiana law requires UM coverage in every automobile liability insurance policy for an amount not less than the limits of bodily injury liability provided by the policy. This minimum amount is automatically included in the policy unless the insured rejects the coverage or selects lower limits. La. R.S. 22:1406 D(1)(a)(i); Cangelosi v. Allstate Ins. Co., 96-0159, p. 3 (La.App. 1st Cir.9/27/96), 680 So.2d 1358, 1360, writ denied, 96-2586 (La.12/13/96), 692 So.2d 375. In 1997, the Legislature enacted Act No. 1476, which amended the statute governing UM coverage to allow an additional selection by an insured for EO UM coverage. The pertinent part of La. R.S. 22:1406 D(1)(a)(i) provides:
Insurers may also make available, at a reduced premium, the coverage provided under this Subsection with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.
The statute also defines the term "uninsured motor vehicle" at La. R.S. 22:1406 D(2)(b), which provides, in pertinent part:
For the purposes of this coverage the term uninsured motor vehicle shall, ... be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time *749 of an accident, as agreed to by the parties and their insurers or as determined by final adjudication. (Emphasis added.)
When the law is clear and unambiguous, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9. But when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ.Code art. 10. The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government. Touchard v. Williams, 617 So.2d 885, 888 (La.1993). The starting point in the interpretation of any statute is the language of the statute itself. Touchard, 617 So.2d at 888.
A paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. Theriot v. Midland Risk Ins. Co., 95-2895, p. 3 (La.5/20/97), 694 So.2d 184, 186. One particularly helpful guide in ascertaining the intent of the legislature is the history of the statute in question and related legislation. Theriot, 95-2895 at 4, 694 So.2d at 186. Where there is any doubt about the intent or meaning of a law in derogation of long accepted rules, the statute is given the effect that makes the least rather than the most change in the existing body of the law. Touchard, 617 So.2d at 892. Finally, our interpretation of the meaning of a statute should be guided by the jurisprudential rule that we not impute a meaning which would lead to an absurd result. Touchard, 617 So.2d at 892.
The declared legislative intent of 1997 Acts, No. 1476, known as the "Omnibus Premium Reduction Act of 1997," was to achieve a significant reduction in the premium rates for motor vehicle insurance. The legislature intended a direct cost savings to citizens of Louisiana. The obvious reason for the lower cost of EO UM coverage is that fewer damages are covered by that type of insurance than the non-economic losses, e.g., pain and suffering, recoverable under the standard UM coverage for bodily injury. Thus, the EO UM coverage provision is meant to provide insurance coverage at a reduced rate to protect persons from suffering economic hardship in the event the tortfeasor is uninsured or underinsured.
The object of the UM statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). In order to recover from a UM insurer, there must first be a determination that the tortfeasor was liable for damages in an amount in excess of the tortfeasor's policy limits. McGeorge v. State Farm Mut. Auto. Ins. Co., 99-2342, p. 5 (La.App. 1st Cir.11/3/00), 771 So.2d 871, 874. The UM insurer has no obligation to pay any portion of the damages suffered by an injured insured that are covered by the tortfeasor's liability policy limits. Rather, the UM insurer is obligated to pay only those damages that exceed the policy limits of the motor vehicle liability policy and that are within the UM policy limits. Rizer v. American Surety & Fidelity Ins. Co., 95-1200, p. 5 (La.3/8/96), 669 So.2d 387, 390. Since UM coverage is excess coverage, plaintiff in this case has a right to receive from the EO UM carrier only that portion of her medical expense damages that exceeds the limits of the tortfeasor's liability insurance and that is within the UM policy limits.
*750 The distinction between EO UM coverage and standard UM coverage is that standard UM coverage permits the insured to recover both general and special damages, while EO UM coverage allows the insured to recover only special damages. In other words, the insured may recover his total claim for damages, including, for example, pain, suffering, inconvenience, mental anguish, past and future lost wages and medical expenses, under standard UM coverage up to the limits of UM coverage, while the insured under an EO UM policy is barred from recovering damages for intangibles such as pain and suffering or mental anguish. This permits the insurer to offer coverage at a much lower premium, thereby meeting the legislative goal of lowering insurance costs.
Revised Statute 22:1406 D(2)(b) defines "uninsured motor vehicle" as a vehicle that has liability coverage that is "less than the amount of damages suffered by the insured and/or the passengers." USAgencies would have us read this statute as "less than the amount of economic damages" in the case of an EO UM policy. The legislature, however, provided no separate definition of uninsured motor vehicle for this new type of UM policy.
The USAgencies liability policy clearly provided coverage that was "less than the amount of damages suffered" by plaintiff. Plaintiff should thus be allowed to recover her medical expenses, which are economic losses expressly included in the definition of economic losses on USAgencies' own form. Had Powell had standard UM coverage, plaintiff would have been able to recover additional damages for pain and suffering. But because Powell paid reduced premiums, USAgencies is spared that expense.
The legislative goals are met by this interpretation of Revised Statute 22:1406: Powell enjoyed the benefits of a lower premium; USAgencies will pay less to an insured than it would have had Powell had a standard UM policy; and plaintiff, the innocent victim, will be covered by insurance, though the coverage is reduced in scope. We thus find the trial court's interpretation of the statute to be legally correct.
For the foregoing reasons, the judgment of the trial court is affirmed at USAgencies' cost.
AFFIRMED.
CLAIBORNE, J., dissents with reasons.
CLAIBORNE, J., dissenting.
I respectfully dissent. A distinction must be made between "economic-loss only" UM coverage and standard UM coverage which is required by Louisiana law unless the insured rejects the coverage or selects lower limits. When a person is legally entitled to recover damages for bodily injury from an owner or operator of an uninsured or underinsured motor vehicle under standard UM coverage, that person will be able to recover both general and special damages. In other words, the person's total claim for damages such as pain, suffering, inconvenience, mental anguish, past and future lost wages and medical expenses are recoverable under standard UM coverage up to the limits of UM coverage. This result does not apply in the case of "economic-loss only" UM coverage.
When deciding whether the party liable is underinsured, it is necessary from the outset to determine the type of damages recoverable from the underlying liability insurer. The UM carrier's liability is conditioned on the tortfeasor's total or partial lack of liability insurance, the type of damage caused, and any limits in the policy permitted by law. Hoefly v. Government Employees Insurance Co., 418 So.2d 575, *751 579 (La.1982). If the UM coverage is standard, all damages must be considered when determining if the underlying liability insurance is sufficient to cover the total of the person's damages. This is because the standard UM coverage could potentially be applicable for all damages overand-above the limits of liability insurance. If the UM coverage is for "economic-loss only," then only the damages which are the direct financial/economic losses of the claimant can be considered when determining if the underlying liability insurance is sufficient to cover the economic-loss damages. In the case of "economic loss-only" coverage, the crucial question is whether there is sufficient underlying liability coverage under the tortfeasor's policy to cover the economic loss. To consider all damages when determining the underinsured status would mean "economic-loss only" UM coverage merely places a cap (determined by the amount of economic loss) on the amount of coverage for all losses. This, it is submitted, is not the intent of the legislature. Furthermore, settlement proceeds in these types of cases would invariably be designated as payment for pain and suffering in order to make further recovery under the "economic-loss only" UM coverage available for medical expenses, even though the underlying liability insurance limit was sufficient to cover the medical expenses.
In the instant case, it is suggested the trial court erred in considering plaintiff's claim for pain and suffering when determining whether the tortfeasor was underinsured for economic losses. The trial court ruled that the underlying liability policy limit was insufficient to cover plaintiff's pain and suffering claim and her medical expense claim.
After recognizing that the UM coverage at issue was for economic-losses only, the trial court should have initially determined the amount of plaintiff's economic-loss claim (in this case it was stipulated to be $4,658.76) and then decided whether the underlying liability policy limit (in this case it was stipulated to be $10,000) was sufficient to cover plaintiff's economic-loss claim. Clearly, plaintiff's direct financial/economic loss of $4,658.76 does not exceed the underlying liability policy limit of $10,000, and therefore, the tortfeasor in this case was not underinsured for economic loss purposes. The underlying liability limit was more than sufficient to cover the plaintiff's stipulated economic loss. For these reasons, I would reverse the judgment of the trial court.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.