821 So.2d 714 (2002)
John DUNN, et ux., Plaintiffs-Applicants,
v.
Gary TERRY, et al., Defendant-Respondent.
No. 36,064-CA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 2002.
*715 Sam N. Gregorio, Shreveport, Amy-Elizabeth Brainard, for Applicants.
Casten and Pearce, by Marshall R. Pearce, Shreveport, for Respondent, State Farm Mutual Automobile Insurance Company.
Before NORRIS, GASKINS and DREW, JJ.
GASKINS, J.
This application for supervisory writs by the plaintiffs was converted by this court from an appeal into a writ application. For the following reasons, we grant the application, reverse the decision of the trial court and remand for further proceedings.

FACTS
On August 20, 1999, John Terry lost control of his pickup truck and crashed into a tree. Both he and his passenger, Catherine Dunn, were minors. Ms. Dunn was injured in the crash; she and her parents sued Mr. Terry, his father, and their auto liability insurer. On January 25, 2001, the plaintiffs settled their action against the defendants for $25,000, the defendants' liability policy limit.[1] On that same day, the plaintiffs amended their petition to add State Farm, their own auto insurer, as a defendant. Although that *716 amended petition is not included in the record, the plaintiffs apparently claimed initially that they had economic damages in the amount of $27,348.85 as a result of the accident. Their demand against the insurer is based entirely on the uninsured motorist (UM) provisions of the plaintiffs' insurance policies.
The Dunn family owned three cars, and each car was covered by a separate State Farm auto insurance policy. One car, owned by both Mr. and Mrs. Dunn, had a policy that provided UM coverage in the amount of $10,000 per person and medical payments coverage in the amount of $1,000. The other two policies, each on separate vehicles owned by Mr. Dunn, provided "economic only" uninsured motorist coverage in the amount of $50,000 per person and medical payments coverage in the amount of $5,000. On March 22, 2000, State Farm paid $1,000 in medical payments, and on January 26, 2001, paid $10,000 in UM coverage; according to State Farm, these payments were made under the first policy listed above.
On August 10, 2001, State Farm filed a motion for summary judgment, asking the court to dismiss the plaintiffs' action against it because the $11,000 payment had already fully compensated the Dunns for $4,105.45, the difference between their damages, $29,101.45, and the settlement with Mr. Terry and his insurer, $25,000. State Farm also raised the defense of stacking.
On October 4, 2001, the plaintiffs filed a motion for partial summary judgment. They alleged that they had suffered $39,652.15 in economic losses "to date." They sought a judgment "allowing them to proceed against State Farm ... for the full amount of economic damages sustained by the plaintiffs under their Economic Only Uninsured Motorist insurance policy." Although the record contains no affidavit or documentary proof of the plaintiffs' damages, the parties agreed that the economic damages were $39,652.15.
The plaintiffs filed a supplement to their motion on November 9, 2001, and attached two exhibits: Bulletin 01-05, dated October 9, 2001 from the Louisiana Commissioner of Insurance, and an August 13, 2001 letter to another insurer from the Louisiana Department of Insurance. The Bulletin states the opinion of the Commissioner in part that:
Insurance policies that define an "uninsured motor vehicle" as one where the insurance coverage on such vehicle is "less than the economic loss" suffered by the insured are not in compliance with law and do not plainly convey to the insured the benefits to which he is entitled under the policy.
The Bulletin further specifies that the Commissioner would no longer approve forms so defining uninsured motor vehicles as of December 31, 2001. The letter from the Commissioner informs the insurer that the insurer's interpretation of its policy to discount the damages paid under the tortfeasor's policy in order to reduce the limits owed under the economic-only UM coverage was unacceptable.
On November 16, 2001, State Farm paid the Dunns an additional $3,652.15 under one of the economic-only policies. On November 26, 2001, the trial court signed a judgment denying the plaintiffs' motion for summary judgment and granting State Farm's motion for summary judgment. The judgment stated:
[B]ased upon the record there remain no disputed genuine issues of material fact with regard to coverage under the policy of insurance issued by State Farm.... As a matter of law, and pursuant to the terms of the insuring agreement, State Farm ... is liable under the economic only uninsured motorist coverage of its *717 policy only in the event the plaintiffs' economic damages exceed the underlying liability coverage. Accordingly, the plaintiffs' Motion for Summary Judgment must be denied, and the defendant's Motion for Summary Judgment is granted.
This judgment was not certified by the court as suitable for immediate appeal. In early December 2001, the plaintiffs appealed the judgment.
On January 31, 2002, this court issued an order converting the appeal into a writ application because the trial court's judgment was an uncertified partial final judgment.

DISCUSSION
The plaintiffs have stated in brief that "the parties have agreed that plaintiffs' total economic loss to date equals $39,652.15." State Farm has paid the Dunns a total of $14,652.15:

$10,000  UM Coverage limit under standard (first) UM policy
$ 1,000  Medical payments limit under first policy
$ 3,652.15  Economic Only UM portion of second policy

State Farm urges that by its payment of $14,652.15, the Dunns have now been fully compensated for their claimed economic loss of $39,652.15 because the Dunns received $25,000 from their settlement with the tort-feasor's insurer. State Farm argues that the entirety of the $25,000 settlement should be considered as compensation to the Dunns for their economic-only damages. The Dunns contend that the $25,000 settlement with the tort-feasor cannot be attributed to reduce the economic damages they are entitled to recover from State Farm under the economic-only UM coverage of their policies. They argue that the $25,000 settlement with the tort-feasor's insurer should be considered as compensation for their general damages and not allocated to their economic-only losses. The Dunns seek a judgment in their favor against State Farm for $25,000, the difference between what State Farm has paid ($14,652.15) and the total amount of their economic-only loss ($39,652.15).
Economic-only uninsured motorist insurance coverage is a relatively new development in Louisiana and was part of the 1997 legislative reform effort in Acts 1997, No. 1476, known as the "Omnibus Premium Reduction Act of 1997."
La. R.S. 22:1406 provides, in pertinent part:
D(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item D(1)(a)(ii) of this Subsection. In no event shall the policy limits of an *718 uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized herein.
. . .
Insurers may also make available, at a reduced premium, the coverage provided under this Subsection with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.
. . .
D(2)(b) For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication.
. . .
(4) In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
La. R.S. 22:1406(D)(2)(b) defines uninsured motor vehicle by reference to the amount of "damages" suffered by the insured but does not explicitly specify that the damages contemplated by the statute must be economic-only damages. Because Ms. Dunn was physically injured in the accident and underwent medical treatment for her injuries, we accept for the purposes of argument her assertion that she has suffered some pain due to the accident that would traditionally be subject to compensation in general damages. In other words, we agree arguendo that Ms. Dunn's damages in toto exceed $39,652.15.
In Marcus v. Hanover Insurance Co., Inc., 98-2040 (La.6/4/99), 740 So.2d 603, 606, the supreme court explained:
An insurance policy is a contract that constitutes the law between the parties.... If the wording of the policy is clear and expresses the intent of the parties, the policy must be enforced as written.... Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions upon the obligations they contractually assume.... However, exclusions contained within the policy that conflict with statutes or public policy will not be enforced.
An insurance policy issued in Louisiana is considered to contain all the provisions required by statute.... Any policy provision that narrows or restricts statutorily-mandated coverage will not be enforced.... An insurer is not at liberty to limit its liability and impose conditions upon its obligations that conflict with statutory law or public policy.... [Citations omitted.]
The plaintiffs' insurance policies providing economic-only uninsured motorist *719 coverage both specify (bold terms are so highlighted in the policy as defined terms):
In consideration of the premium charged, it is agreed that the following is added to your policy:
"Economic Only" Uninsured Motor Vehicle Coverage UEO
. . .
We will pay economic damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
Uninsured Motor Vehicle under coverage UEO-means:
1. A land motor vehicle, the ownership, maintenance or use of which is:
. . .
b. insured or bonded for bodily injury liability at the time of the accident; but
. . .
(3) the limits of liability:
(a) are less than the amount of damages the insured is legally entitled to collect for bodily injury;
. . .
Limits of Liability Under Coverage UEO
. . .
5. The most we will pay will be the lesser of:
a. the difference between the amount of economic damages for bodily injury that an insured is legally entitled to collect, and any amount paid or payable for any damages because of bodily injury to the insured by or for any person or organization who is or may be held legally liable for the bodily injury, or
b. the limits of liability of this coverage.
The State Farm policy in another section defines bodily injury:
Bodily injurymeans physical injury, sickness or mental anguish sustained by a person. This includes death that results from it.
Bodily injury does not include emotional distress or mental anguish unless it arises out of actual physical injury to a person.
Although the general policy definition of bodily injury includes emotional distress or mental anguish resulting from the actual physical injury to a person, the economiconly coverage specifies that State Farm will pay only "economic damages for bodily injury." The policy does not define economic damages, but in keeping with the statutory authority for the issuance of economic-only UM coverage, we interpret the policy phrase "economic damages for bodily injury" to exclude damages for "pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state" despite the general definition of bodily injury that includes those items. La. R.S. 22:1406(D)(1)(a)(i).
The plaintiffs have been paid $25,000 by the insurer of the tort-feasor. The State Farm policy takes such payments into account as a set-off when calculating State Farm's obligation to its insured. The insurer agreed to pay only:
the difference between the amount of economic damages for bodily injury that an insured is legally entitled to collect, and any amount paid or payable for any damages because of bodily injury to the insured by or for any person or organization who is or may be held legally liable for the bodily injury ...
*720 The $25,000 settlement by the tort-feasor is encompassed by the phrase "any amount paid or payable for any damages because of bodily injury to the insured." This phrase does not limit the set-off amount to only economic damages incurred because of bodily injury; the policy plainly means to set-off "any" damages paid because of bodily injury.
The question is whether this policy provision conflicts with the law or with public policy. La. R.S. 22:1406(D)(2)(b) states that a vehicle is defined to be uninsured "when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident...." The legislature has not explicitly stated that "damages" means economic-only damages when the victim has only economic-only uninsured motorist insurance coverage.
A similar issue was recently considered by the First Circuit in Butler v. Allen, XXXX-XXXX (La.App. 1st Cir.9/28/01), 808 So.2d 746, writ denied, 2001-2924 (La.2/1/02), 808 So.2d 331. In Butler, the plaintiff received "extensive injury" while riding as a guest passenger in an auto covered by economic-only UM coverage. The plaintiff incurred $4,658.76 in medical expenses as a result of the accident. After a policy-limits settlement with the tortfeasor's insurer for $10,000, the plaintiff proceeded against her host's economic-only UM policy for her medical expenses. The insurer argued that the settlement with the tort-feasor's insurer had fully compensated the plaintiff and refused to pay under the economic-only UM policy. The trial court and the appellate court held that the insurer was obligated to pay the plaintiff's medical expenses because the tort-feasor's liability policy provided coverage that was less than the amount of damages suffered by the plaintiff, whose painful injuries included bulging disks.
In the instant case, the plaintiffs settled with the tort-feasor and his insurer prior to any payment by the plaintiffs' UM insurer, thus destroying any right of subrogation the plaintiffs' UM insurer might have otherwise had against the tort-feasor. La. R.S. 22:1406(D)(4); Bosch v. Cummings, 520 So.2d 721 (La.1988). If no settlement had yet been reached and State Farm had paid its UM insured first, then State Farm would be subrogated to the rights of its insured victim against the tort-feasor insofar as State Farm had paid the tort-feasor's obligation. Egros v. Pempton, 606 So.2d 780 (La.1992). In that case, the victim could seek recovery of her general damages from the tort-feasor while the victim's UM insurer could seek recovery of the economic-only damages it had paid to its insured. In the event that the tort-feasor was underinsured, the tort-feasor's insurer would pay the victim in preference to the victim's UM insurer. La. C.C. art. 1826; Bond v. Commercial Union Assurance Co., 407 So.2d 401, 408 n. 1 (La.1981). As the Bond court stated:
By allowing the insurer who either totally or partially pays the victim for the damages he has suffered a right of subrogation to his action against the uninsured or underinsured tortfeasor, the codal scheme promotes full compensation of accident victims by making the tortfeasors ultimately responsible for their delicts and thereby encouraging motorists to maintain adequate liability coverage. By giving the insured who has been only partially compensated for his loss a lawful cause of preference over the insurer for payment out of his debtor's property, the code further implements the object of the uninsured motorist statute, which is to promote full recovery for damages by innocent automobile accident victims by making *721 both primary protection and excess coverage available.
According to Bond and numerous other Louisiana cases, the objective of the UM insurance statute is and has been to promote the full recovery of damages by innocent auto accident victims.
In the Omnibus Premium Reduction Act of 1997, the legislature modified the law under the generally stated purposes of rate reduction and cost savings to Louisiana citizens. The legislature has allowed motorists the option to reject UM coverage completely and now explicitly allows insurers to limit the scope of UM coverage to the insured's economic-only loss. However, the limitation of the insurer's risk to economic-only losses must be matched by a corresponding limitation on the insurer's right to benefit from the victim's recovery of damages from the tort-feasor. The jurisprudence interpreting La. R.S. 22:1406(D)(4) has consistently held that the UM insurer is entitled to subrogation only to the extent that the insurer has paid the obligation of the tort-feasor. When an insurer elects to sell economic-only UM insurance, the insurer agrees to bear the risk of economic loss to its insured. Allowing the insurer to avoid a portion of this risk by automatically allocating the entirety of a settlement between the insured and a tort-feasor as an economic loss would be contrary to the policies embodied in La. R.S. 22:1406 and would allow the insurer to collect a premium for covering a risk that the insurer could then avoid when the risk was realized.
The legislature's goal of promoting full recovery by innocent victims would be subverted if the economic-only uninsured motorist insurer were to receive credit for all amounts paid for economic and noneconomic damages for bodily injuries. Likewise, the legislative aim to reduce insurance rates would be supplanted if this insurer received no credit for the portion of the amount paid that was attributable to economic damages for bodily injury. To strike a balance between these concerns, the economic-only uninsured motorist insurer should get credit for the economic damages paid for bodily injury. The court, or the remaining parties, must determine the total amount of damages suffered by the victim, specifying the portion of that award constituting economic damages for bodily injury. (This determination must be made by the finder of fact after consideration of evidence or by agreement among the remaining parties; no stipulation between the victim and the paying tort-feasor or his insurer will satisfy this inquiry.) Then the ratio of these economic damages to the whole damage award must be decided. That ratio would then be applied to the amount paid by the tort-feasor to figure how much of the economic damages have been satisfied.[2]
In the instant case the record does not disclose a finding by the trier of fact of how much of the $25,000 paid was attributable to economic damages for bodily injury. Because this question of fact remains, summary judgment in favor of State Farm was not appropriate.

*722 CONCLUSION
For the above assigned reasons, we hereby grant supervisory relief and reverse the judgment of the trial court granting summary judgment in favor of State Farm. This matter is remanded to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The plaintiffs specifically reserved their rights against State Farm.
[2] For example, if the tort-feasor's insurer paid $10,000 to the tort victim, then a determination would need to be made of the total award, and the portion of that award constituting economic damages. If the total award was found to be $75,000, and the economic damages were determined to be $25,000, then the economic damages are one-third of the total amount. One-third of the sum paid-$10,000-would be the amount of economic damages paid, or $3,333.33. The economic-only uninsured motorist policy would then pay the difference between the total amount of economic damages, $25,000, and the amount paid, $3,333.33, up to the policy limits.