PETTIGREW, J.,
concurs in part and dissents in part, and assigns reasons.
¡U concur with the majority’s conclusion on the issue of quantum and agree that there is no abuse of discretion in the jury’s damage award in this case. However, I must dissent from that portion of the majority’s opinion that affirms the trial court’s ruling on the prescription issue. On appeal to this court, Kelley argues that the action filed against General interrupted prescription against all solidary obligors or joint tortfeasors under the law, regardless of the jury’s verdict. Citing La. Civ. Code arts. 1799 and 3503, Kelley maintains that his timely filed suit against one debtor in solido, General, interrupted prescription against all, ie., Ms. Skinner,[1] and thus, her *548 liability carrier, USAA, with whom she was solidarity liable.[2]
Ms. Skinner and USAA respond by arguing that “there are only two circumstances under which a timely filed lawsuit against some defendants would interrupt the running of prescription against a defendant who is joined more than one year after the injury-causing incident,” i.e., (1) a timely filed lawsuit against a joint tortfea-sor interrupts the running of prescription against all joint tortfeasors (La. Civ. Code art. 2324(C)); and (2) a timely filed lawsuit against one solidary obligor interrupts prescription as to all solidary obligors (Articles 1799 and 3503).
LAs previously indicated, all of the corporate defendants who were timely sued were dismissed from this action prior to trial based on their lack of liability. General, the only remaining defendant who was timely sued, was not a tortfeasor, but rather Kelley’s UM insurer. Thus, Article 2324(C) has no application to the facts of this case. The timely filed lawsuit against General could not serve to interrupt prescription as to Ms. Skinner or USAA under Article 2324(C) because General was not a joint tortfeasor with Ms. Skinner or USAA.
With regard to solidary liability, the Louisiana Supreme Court has set forth the elements for determining the existence of a solidary obligation noting, “[a]n obligation is solidary among debtors when they are obliged to the same thing, so that each may be compelled for the whole, and when payment by one exonerates the other toward the creditor.” Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 576 (La.1982); La. Civ.Code art. 1794 (“An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.”). With these principles in mind, and highlighting the fact that Ms. Skinner was not uninsured (as was the tortfeasor in Hoefly ) and that the jury awarded Kelley an amount well within the limits of USAA’s coverage, Ms. Skinner and USAA maintain that there was no solidary liability between Ms. Skinner and General because General was exonerated from all liability. Ms. Skinner and USAA further argue that “any solidary obligation between General and Ms. Skinner would have arisen only if and after [Kelley’s] damages exceeded the amount of liability coverages” in the USAA policy.
The object of the uninsured motorist statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). The statute is clear that UM coverage “applies only where the offending motor vehicle is uninsured or underinsured.” Alexis v. Lumbermens Mut. Cas. Co., 424 So.2d 506, 507 (La.App. 5 Cir.1982). In order |.sto recover from a UM insurer, there must first be a determination that *549 the tortfeasor was liable for damages in an amount in excess of the tortfeasor’s liability insurance policy limits. Butler v. Allen, 2000-1726; p. 5 (La.App. 1 Cir. 9/28/01), 808 So.2d 746, 749, writ denied, 2001-2924 (La.2/1/02), 808 So.2d 331. The UM insurer has no obligation to pay any portion of the damages suffered by an injured insured that are covered by the tortfeasor’s liability insurance policy limits. Rather, the UM insurer is obligated to pay only those damages that exceed the policy limits of the motor vehicle liability insurance policy and that are within the UM policy limits. Guidry v. Millers Cas. Ins. Co., 2001-0001, p. 9 (La.App. 1 Cir. 6/21/02), 822 So.2d 675, 683.
In Hoefly, the Louisiana Supreme Court dealt with an uninsured motorist and the injured plaintiffs UM insurer. The court described the elements of solidary liability as follows:
Under Civil Code Article 2091, “[tjhere is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.” When an obligation fulfills this definition and contains these ingredients, the obligation is in solido.
[[Image here]]
When payment is made by either the tortfeasor or the uninsured motorist carrier the other is exonerated toward the creditor as to the solidary obligation. This is a direct consequence of each debtor being obliged to the same thing so that each may be compelled for the whole, as if he were the sole debtor.
Hoefly, 418 So.2d at 577-579 (citations and footnotes omitted).
The Hoefly court concluded that the uninsured or underinsured motorist and the UM insurer were solidary obligors, making applicable the rule that suit against one debtor in solido interrupts prescription against all. Hoefly, 418 So.2d at 577.
A few years later in Fertitta v. Allstate Ins. Co., 462 So.2d 159, 162 (La.1985), the supreme court reaffirmed its holding in Hoefly but noted that “[a] solidary obligation between the tortfeasor and the victim’s [UM insurer] may arise either when the tortfeasor is uninsured or when the tortfeasor’s liability coverage is less than the amount of damages sustained by the tort victim.”
|4In Rizer v. American Sur. and Fidelity Ins. Co., 95-1200 (La.3/8/96), 669 So.2d 387, the issue presented was whether an accident victim’s UM insurer was solidarity obligated with the tortfeasor’s liability carrier so that the victim’s timely suit against the latter interrupted prescription with regard to the victim’s UM insurer. The court concluded:
In effect, [the UM statute makes] uninsured motorist coverage “excess” coverage. The uninsured motorist carrier has no obligation to pay any portion of an injured insured’s damages within the underinsured tortfeasor’s liability policy limits. Rather, the uninsured motorist carrier is only obligated to pay those damages which exceed the policy limits of the motor vehicle liability policy and which are within the uninsured motorist policy limits....
It is clear that the obligation of the uninsured motorist carrier does not begin until the obligation under the tort-feasor’s motor vehicle liability policy ends; there is no overlap. Since an uninsured motorist carrier and a tortfea-sor’s motor vehicle liability insurer each has a separate obligation which is not *550 coextensive, they are not liable for the same thing. Therefore, the two are not solidary obligors.
Rizer, 669 So.2d at 390.
In Alexis v. Lumbermens Mut. Cas., Co., 424 So.2d 506, 507 (La.App. 5 Cir. 1982), the plaintiffs sought to prove that because prescription barred tort recovery from the tortfeasor and his liability insurer, the car that hit them should be considered uninsured. The court found that Louisiana’s UM statute was clear that uninsured coverage only applied where the offending motor vehicle was uninsured or underinsured. The tortfeasor’s motor vehicle had sufficient liability insurance to cover the plaintiffs’ injuries; if the plaintiffs timely sued and proved liability, the plaintiffs would have recovered from available insurance. The court concluded, “the [UM insurer] is not liable under these circumstances because [UM] coverage applies only where the tortfeasor is uninsured or underinsured. It does not apply where prescription bars recovery against an adequately insured tortfeasor.” Alexis, 424 So.2d at 507. According to the court, “[t]hat they failed to [timely sue] cannot now be urged as grounds to extend the uninsured motorist coverage beyond the limits mandated by statute.” Id. Recognizing the effect of its decision on the plaintiffs, the Alexis court noted, “Sympathy ... does not permit us to allow [plaintiffs] recovery against an |sinsurer whose statutorily regulated policy does not apply where the tortfeasor is adequately insured, simply because they or their attorney inadvertently allowed prescription to run against the tortfeasor.” Id.
Because Ms. Skinner was not uninsured, any solidary obligation between General and Ms. Skinner would have only arisen if Kelley’s damages exceeded the amount of coverage afforded Ms. Skinner in the USAA policy. General, as Kelley’s UM insurer, had no obligation to pay any portion of Kelley’s damages within Ms. Skinner’s liability policy limits. Rather, General was only obligated to pay those damages that exceed the policy limits of the USAA liability policy and that were within the UM policy limits. General’s liability was conditioned upon exhausting USAA’s policy limits. Rizer, 669 So.2d at 390.
As previously indicated, the jury awarded Kelley an amount of damages well within USAA’s policy. Judgment was rendered in favor of Kelley and against Ms. Skinner and USAA; in solido, for $422,500.00. Having found no abuse of discretion in the jury’s damage award in this case, there is no in solido obligation between Ms. Skinner and General. I would reverse that portion of the September 4, 2013 judgment finding Ms. Skinner and USAA liable, in solido, to Kelley for $422,500.00 and reverse the trial court’s denial of the exception raising the objection of prescription filed by Ms. Skinner and USAA. I would render judgment in favor of Ms. Skinner and USAA sustaining their peremptory exception raising the objection of prescription and dismissing, with prejudice, Kelley’s claims against them. In all other respects, I would affirm the September 4, 2013 judgment.
For these reasons, I concur in part and dissent in part.

. Although the majority refers to Ms. Skinner as an "unidentified patron” in its opinion, the record reflects that immediately following the incident in question, Ms. Skinner got out of her vehicle, approached Kelley and asked him if he was alright, and offered to pay to have his shirt cleaned. Kelley indicated in his testimony that he had no independent recollection of these events. However, he also stated that he had no reason to believe that Ms. *548 Skinner was dishonest about what happened, as she had been very candid throughout the whole process. In fact Kelley testified, "[A]nything that she says happened probably did.” There is no explanation in the record as to why the parties did not exchange information at the time of the incident.

. Article 1799 states: "The interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs.” Similarly, Article 3503 provides, in pertinent part, as follows: "When prescription is interrupted against a solidary obligor, the interruption is effective against all soli-dary obligors and their successors.”