HIGGINBOTHAM, J.
| ¡.This appeal involves a suit for personal injury damages resulting from a rear-end collision. The issues on appeal concern a judgment rendered ágainst the injured motorist’s own-“economic-loss only” under-insured/uninsured motorist (EOUM) insurer, after the rear-ending motorist and his insurer stipulated to liability and settled with the injured motorist for- the tortfea-sor’s liability insurance policy limits.
FACTS AND PROCEDURAL BACKGROUND
• On April 10,’ 2013, Ryan Hebert was involved" in- an accident' while driving his pickup truck north on Louisiana Highway 1 in West Baton Rouge Parish. As Hebert slowed for traffic ahead of him, he was rear-ended' by a pickup truck driven by Caleb Boesch. The force of the collision caused the bed of Hebert’s pickup to be shoved forward, breaking the back window and. the driver’s seat. Hebert sustained injuries to his neck, back, shoulders,, chest, and shins. .<
Hebert filed suit against Boesch,-GEI-CO Casualty Company as the. liability insurer of Boesch, and his own EOUM insurer, LM General Insurance Company. Admitting that Boesch was at fault in causing the accident, GEICO did not contest liability, and prior to trial, GEICO and Boesch settled with Hebert for. the $50,000.00 limits of the GEIGO liability policy. Both GEICO and Boesch were dismissed ■ from the suit. Also prior to trial, LM General ■ compensated Hebert $5,000.00 under the medical payments provision of its policy.
The case proceeded[1] to á bench trial on January 26, 20Í5, against LM General solely on the issue of Hebert’s general and special damages that included lost wages as well as medical expenses. Hebert and LM. General - submitted joint stipulations concerning liability and insurance coverage. They also stipulated that Hebert’s lost wages were $262.50 and his past medical expenses totaled $15,290.98[1] Hebert was lathe only witness to testify at trial. Hebert’s medical records, revealing conservative treatment for his accident-related injuries for approximately twenty months,' were admitted into evidence without objection.
Subsequent to trial, the trial court awarded Hebert $75,000.00 in general damages, the stipulated amounts for lost wages of $262.50 and past medical expenses of $15,290.98, and $5,000.00 for future medical expenses. Following First Circuit jurisprudence in written reasons issued on June 19, 2015, the trial court ruled that Hebert could recover the entirety of his economic losses from LM General, pursuant to 'the EOUM policy, since GEICO’s liability policy limit of $50,000.00 was exhausted by the $75,000.00 general damage award to Hebert.
The trial court signed a judgment consistent with its reasons on July 13, 2015, in favor of Hebert and against LM General in the amount of $20,553.48 for economic loss damages, with -a credit of $5,000,00 for the medical payments previously made by LM General. The final judgment rendered against LM General totaled $15,553.48, together with legal interest from the date of judicial demand, plus court costs. LM General appeals, asserting that the trial court erred in: (1) failing to apply a pro rata formulá to reduce the special dam *802 ages; (2) awarding an abusively high amount of general damages; and (3) awarding, future medical expenses without evidence of necessity or inevitability of those expenses.
DISCUSSION

EOUM Coverage

 LM General’s first assignment of error involves a question of law: whether an injured party can recover the full amount of his economic losses under an EOUM policy, when the underlying liability policy is sufficient to cover the economic damages but insufficient to cover the total damages sustained. Appellate review of questions of law consists of a simple review of the correctness of the trial court’s decision as a matter of law. Deville v. South Central Industries, Inc., 99-1377 (La.App. 1st Cir.6/23/00), 764 So.2d 335, 337, writ denied, 2000-2619 (La.11/17/00), 774 So.2d 976. As noted by the trial court and argued by Hebert, this court has already decided this issue many years ago in Butler v. Allen, 2000-1726 (La.App. 1st Cir.9/28/01), 808 So.2d 746, 748, writ denied, 2001-2924 (La.2/1/02), 808 So.2d 331, wherein we held that the injured party could recover the full amount of economic loss damages from the EOUM insurer. UM coverage is “excess” coverage, and a plaintiff has a right to receive,from a UM insurer only that portion of his damages which exceeds the limits of the tortfeasor’s liability insurance. Boudreaux v. Colonial Lloyd’s Ins. Co., 633 So.2d 682, 685 (La. App. 1st Cir.1993).
In Butler, this court considered the statutory requirements for EOUM coverage and the statutory definition of an “uninsured motor vehicle” and explained that the EOUM coverage authorized by statute “allows the insured to recover only special damages.”[2] Id., 808 So.2d at 750. Future medical expenses are special damages. Hoagboon v. Cannon, 2010-0909 (La.App. 1st Cir.12/29/10), 54 So.3d 802, 806. Also, in Butler, 808 So.2d at 750, this court explained that under standard UM coverage, an insured may recover his total claim for damages, including, for example, pain, suffering, inconvenience, -mental anguish, past and future lost wages,; and medical expenses, while under an EOUM policy, the insured is barred from recovering damages for non-economic intangibles such as pain and suffering, inconvenience, or mental anguish.
Louisiana’s UM statute, La.' R.S. 22:1295(2)(b), defines “uninsured ’motor vehicle” as a vehicle that has liability coverage that is “less than the amount of 1 ^damages suffered by the insured ... as agreed to by-the parties-and their insurers or as determined by final adjudication.” [Emphasis added.] LM General would have us read this statute as “less than the amount of economic damages suffered by the insured” in the case of an EOUM policy; however, the legislature has not provided a separate and distinct definition of an uninsured motor vehicle for an EOUM policy. See Butler, 808 So.2d at 750. Further, we note that this court’s prior interpretation of the definition of an uninsured motor vehicle in the context of *803 an EOUM policy has not been legislatively overruled, even though the UM statutory scheme has been redesignated, renumbered, amended, and reenacted several times since our decision in Butler,[3]
While we recognize a split in our state’s circuit courts of appeal on this issue, we are not inclined to revisit or overrule our holding in Butler:[4] Since the GEICO liability policy in this case clearly provided coverage that was less than the amount of damages suffered by Hebert “as determined by final adjudication,” Hebert is allowed to recover the full amount of his economic losses that are expressly includ--ed in the definition of economic losses contained in LM General’s EOUM policy endorsement.[5] Additionally, because the record is void of evidence that the full amount of economic losses would somehow result in a duplicate payment to Hebert I ¿for his special damages, we find no merit to LM General’s contention that its policy language limits the amount paid ’pursuant to the EOUM coverage.[6]
We find further support in the holding of a Louisiana Supreme Court case, Benoit v. Allstate Ins. Co., 2000-0424 (La.11/28/00), 778 So.2d 702, 708, where the court, dealing with another issue regarding the amount in dispute, concluded that the pre-trial settlement with a liability insurer is not to be considered in determining the value of the cause of action against the UM carrier. As we determined in Butler, 808 So.2d at 750, the legislative goals are met by our interpretation of the UM statute: Hebert enjoyed the. benefits of a lower insurance premium for EOUM, and LM General will pay less to Hebert than it would have had Hebert had a standard UM policy. Thus, we find the trial court’s .interpretation and application of the UM statute in the EOUM context, and consistent with Butler, to be legally correct.

General Damages

Next, LM General contends that the trial court’s award of $75,000.00 for general damages was abusively high, thereby suggesting that Hebert’s general damages *804 did not actually exceed the underlying liability policy limits of $50,000.00.; LM General emphasizes that Hebert’s activities were not'hindered by his nonsurgical soft-tissue injuries or treatment, and that after receiving sporadic and conservative treatment for ‘ approximately twelve months, Hebert had a six-month gap without any treatment at all. At the time of trial in January, 2015, Hebert had not been to see a doctor or physical therapist for a little over one year, and he had been released from further treatment.
 The trier of fact is accorded much discretion in fixing general damagé awards. See La.' Civ.Code art. 2324.1. The discretion vested in the trier of fact is “great,” even vast, so that an appellate court should rarely disturb' an award of general |7damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.E.d.2d 379 (1994). Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the trier of fact abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Theriot v. Allstate Ins. Co., 626 So.2d 1337, 1340 (La.1993). Reasonable persons frequently disagree about the measure . of general damages in a particular ease. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the' effects of the particular injury, to the particular plaintiff that the appellate court should increase or reduce the award. Youn, 623 So.2d at 1261.
An award of general damages involves mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of-lifestyle which cannot be measured definitively in terms of money. Rhodes v. State Through Dept. of Transp. and Development, 94-1758 (La.App. 1st Cir.12/20/96), 684 So.2d 1134, 1144, writ not considered, 97-0242 (La.2/7/97), 688 So.2d 487. The primary objective of awarding general damages is to attempt, with monetary compensation, to restore the injured party to the state the party was in. at the time immediately preceding injury. Id. The factors to be considered in assessing quantum for pain and suffering are severity and duration; however, there is no mechanical rule for determining general damages and the facts and circumstances of each case must control. Id., 684 So.2d at 1144-45.
None of Hebert’s physicians testified at trial, but his medical records were admitted into evidence without objection. Hebert testified, and his medical records support, that before the accident, he had never suffered with any type of chronic pain or treated with any doctors for pain associated with his back, neck, or shoulders. He stated that. immediately after the accident, he felt tightness in his back, but he did not go to the hospital. Instead, he went to see his primary care physician, Dr. Phillip LPadgett, a few hours after the accident. He went again two days later. Dr. Padgett prescribed medication for Hebert’s general soreness associated with the accident. A few weeks later, on April 23, 2013, Hebert was seen by a chiropractor, Dr. Michael J. Goff, for ongoing pain in his neck and back, as well as his rib and chest area. Hebert continued to treat with Dr. Goff regularly until January, 2014, receiving heat treatments, massage, and manipulation of his spine.
In October 2013, Hebert underwent MRI scans of his neck and back that were ordered by Dr. Goff. Thereafter, Hebert was referred to an orthopedic surgeon, Dr. Kevin P. McCarthy,- whom Hebert saw on ■ December 3y 2013, to see if he *805 might need further treatment such as surgery or injections. Based on the MRI scans, Dr. McCarthy diagnosed two disc bulges, one in Hebert’s neck at C6-7, with cervical radiculopathy, and a mild one in his back at L4-5. Dr. McGarthy recommended further conservative treatment consisting of physical therapy and medication, or epidural steroid injections in Hebert’s cervical spine. Hebert elected to treat conservatively with medication and six weeks of physical therapy, twice per week, that included dry needling, along with home exercises. However, Hebert was not comfortable pursuing the epidural steroid injections, and he did not actually pursue the physical therapy that was ordered until ten months later in October, 2014, after a flare up of pain during a fishing trip. As early as March, 2014, Hebert was released from Dr. McCarthy's care, to be seen on an “as needed” basis for intermittent flare ups of pain.
At the time of trial in January, 2015, Hebert testified that he had not been back to see Dr. McCarthy after finishing physical therapy in December, 2014, However, Hebert stated that he had the option to return for pain flare ups or to pursue the recommended cervical epidural steroid injections. The medical records do not reflect any further treatment after December, 2014, and Hebert testified that he had. been released from all treatment, - Hebért underwent an independent • medical Revaluation on November 19,' 2014, with another orthopedic surgeon, Dr,‘ Jason E. Smith. In his report after the exam, Dr. Smith stated that he thought that all of Hebert’s treatments were appropriate, medically necessary, and related to the accident. Further, Dr. Smith agreed with Dr. McCarthy’s assessment that Hebert may experience intermittent flare ups with pain in the future.. On the day of trial in January, 2015,- Hebert testified that his back and neck felt fine. .■
As for Hebert’s activity level, he testified that since the accident he had tried to resume his normal activities as best he could, and he did not miss work due to pain. -Hebert is married, has two young children; and works in a warehouse setting. He stated that he is fearful of a flare up of pain, so he is very careful when he plays with his children and when he lifts things. He admitted- that he has only experienced one flare up of back pain since the accident, which occurred during a fishing trip and took about a month to resolve. Hebert acknowledged that since the accident he has been hunting and fishing, skiing with his family, and helped coach his child’s baseball team, but he testified that he is nervous and careful when he does all activities. According to Hebert, he' continues to do physical therapy exercises at home.
After listening-to Hebert’s testimony, the. trial court determined that Hebert had sustained- significant injuries to his neck and back in the accident and that Hebert, who was 35 years old at the time of trial, would have to deal with the injuries for the rest of his life. Certainly, the duration of a person’s symptoms and treatment after an injury are relevant factors for a trier of fact to consider in awarding general damages. Gillmer v. Parish Sterling Stuckey, 2009-0901 (La.App. 1st Cir.12/23/09), 30 So.3d 782, 788. The severity and; duration of Hebert’s injuries attributable to the accident were factual issues subject to the trial court’s assessment of Hebert’s credibility, along with the evidence in the medical records. The trial court obviously accepted Hebert’s testimony regarding his pain in assessing general | ^damages. Such credibility determinations must be accorded great deference by appellate courts. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Accordingly, after a thorough review of the record, and *806 considering the great discretion vested in the trial court in awarding general damages, we find that the award of $75,000.00 for Hebert’s pain and suffering since the accident and into the future does not constitute an abuse of discretion under the circumstances of this case.

Future Medical Expenses

The trial court awarded Hebert $5,000.00 for future medical expenses. The judgment did not itemize the components of the award, but in oral reasons, the trial court explained that Hebert would “definitely” incur expenses of “at least” $5,000.00 for “any injections and doctors’ visits that he would have to have as he goes on with th[ese] bulgefs] and having to deal with them over his lifetime.” However, LM General argues that there was no evidence of future medicals and that Hebert specifically testified that he would not undergo the epidural steroid injections. We agree the evidence is lacking as to future medical expenses.
An award for future medical expenses is inherently speculative and not susceptible of being calculated with mathematical certainty. See Menard v. Lafayette Ins. Co., 2009-1869 (La.3/16/10), 31 So.3d 996, 1006. Future medical expenses will not be awarded in the absence of medical testimony establishing by a preponderance of the evidence that they are indicated and setting out their probable cost. Menard, 31 So.3d at 1006; Jenkins v. State ex rel. Dept. of Transp. and Development, 2006-1804 (La.App. 1st Cir.8/19/08); 993 So.2d 749, 772, writ denied, 2008-2471 (La.12/19/08), 996 So.2d 1133. Nevertheless,-when the record establishes that future medical expenses will be necessary and inevitable, courts should not reject the award because the record does not provide the exact value, if the court can determine from the record, past medical expenses, and other evidence a minimum amount that reasonable minds could not disagree would be required. In lnsuch cases, the court should award all future medical expenses that the medical evidence establishes the plaintiff, more probable than not, will be required to incur. Goza v. Parish of West Baton Rouge, 2008-0086 (La.App. 1st Cir.5/5/09), 21 So.3d 320, 337, writ denied, 2009-2146 (La.12/11/09), 23 So.3d 919, cert. denied, 560 U.S. 904, 130 S.Ct. 3277, 176 L.Ed.2d 1184 (2010).
There is no evidence in the record before us that it is more probable than not that it will be necessary and inevitable for Hebert to undergo the cervical epidural steroid injections that were initially contemplated by Dr. McCarthy. ' Additionally, Hebert indicated that the flare up pain he experienced was more related to his back, not his neck, and he clearly testified that he was not comfortable with proceeding with the cervical injections. While the medical records and Hebert’s testimony indicate that Hebert might need to return for medical treatment “[i]f he has any recurrent pain,” the “Recommendations/Plan” signed by Dr. McCarthy on March 6, 2014, states that any intermittent flare ups with neck-and low back pain in the future would “possibly” include epidural steroid injections, which are obviously elective in nature and ultimately dependent upon Hebert’s decision to undergo. There is no mention of the injections in any other physician recommendations after that date. Even the.assessment of Dr. .Smith, who performed the independent medical evaluation in November 2014, indicated that there was only a “possibility” that Hebert would have intermittent flare ups that would require therapy and injections.
Thus, we find that the record does not reasonably support a finding that a future epidural steroid injection will be necessary and inevitable by a preponderance of the *807 evidence. The evidence presented at this trial was more directly related to an award of general damages only, necessarily including future pain and suffering, which the record indicates that Hebert will sporadically continue to endure. See Smith v. Southwest Louisiana Hosp. Ass’n, 2015-502 (La.App. 3d Cir.11/4/15), 178 So.3d 308, 315; Hinton v. Wal-Mart Stores, Inc., 33,557 (La.App. 2d Cir. 6/21/00), 764 So.2d 203, 205. However, Hebert offered no evidence, medical or otherwise, showing that it is more probable than not that he will incur medical expenses for epidural steroid injections or other medical treatment in the future. We are unable to assume that Hebert will incur any such expenses, and any monetary award for future medical expenses under the circumstances of this case would require sheer speculation. Because we find that Hebert did not bear his burden of proof on the issue of future medical expenses, the trial court abused its discretion in awarding $5,000.00 for future medical expenses. We will therefore amend the judgment to delete this award.
CONCLUSION
For the reasons assigned, the judgment of the trial court is amended in part to delete the award of $5,000.00 for future medical expenses to plaintiff, Ryan Hebert, thereby reducing the total judgment amount in favor of Ryan Hebert and against LM General Insurance Company to $10,553.48. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to LM General Insurance Company.
JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
PETTIGREW, J., concurs.

. At the time Butler was decided, the statutory language defining EOUM coverage was contained in La. R.S. 22:1406(D), which was later redesignated as La. R.S. 22:680 by 2003 La. Acts, No. 456, § 3, before being renumbered as La. R.S. 22:1295 in 2009. The court in Butler also explained that the legislative intent and policy reasons for enacting EOUM coverage was to achieve a significant reduction in the premium rates for motor vehicle insurance and, further, that the obvious reason for the lower cost of EOUM coverage is that fewer damages are covered. See Butler, 808 So.2d at 749. See also Hoagboon v. Cannon, 2010-0909 (La.App. 1st Cir.12/29/10), 54 So.3d 802, 806 n. 2.

. It is well-settled that when the Legislature amends and reenacts provisions in a statute, it does so with a full awareness of court cases interpreting the statute and well-established principles of statutory construction. See Borel v. Young, 2007-0419 (La.11/27/07), 989 So.2d 42, 48.

. See Woods v. Holzhauer, 2002-1349 (La. App. 3d Cir.6/4/03), 847 So.2d 771, 774, and Dunn v. Terry, 36,064 (La.App.2d Cir.6/19/02), 821 So.2d 714, 721, writ denied, 2002-1981 (La.10/25/02), 827 So.2d 1156, where our brethren in the Third and Second Circuit Courts of Appeal indicated that a ratio or pro rata formula concerning economic damages as to the whole damage award must be utilized before determining the amount owed by the EOUM insurer. We note that a factual distinction exists in the case sub judice and in Butler, in that the general damages suffered by the plaintiffs clearly exceeded the underlying liability policy limits and there was no evidence that the liability policy limit settlement was for anything other than non-economic damages for bodily injuries.

. LM General’s policy defines "economic loss” to include "reasonable and necessary" medical expenses incurred, and “non-economic loss” to include pain, suffering, incon- • venience, and mental anguish.. We further note that LM General’s policy clearly states that LM General “will pay for damages for ‘economic loss’ under this coverage only after the limits of liability under any bodily injury liability bonds or policies applicable to the ‘uninsured motor vehicle’ have been exhausted by payment of judgments or settlements.”

. The record does not contain a copy of the settlement/release documents between Hebert and GEICO; thus, there is no evidence that a portion of the $50,000.00 payment by GEICO was for economic losses. Therefore, the limiting language in LM General's policy con- . cerning duplicate payments is not applicable.