773 So.2d 702 (2000)
David BENOIT
v.
ALLSTATE INSURANCE COMPANY.
No. 00-CC-0424.
Supreme Court of Louisiana.
November 28, 2000.
Rehearing Denied January 5, 2001.
*703 Paul Michael Donovan, Vance William Ott, Donovan & Lawler, Metairie, Counsel for Applicant.
Darryl Michael Breaux, Rene Brierre deLaup, New Orleans, Counsel for Respondent.
Marc Hale Conrad, New Orleans, Counsel for Amicus Curiae United Automobile Services Assn.
John J. Weigel, New Orleans, Counsel for Amicus Curiae Louisiana Association Defense Counsel.
LEMMON, Justice
La.Code Civ. Proc. art. 1732(1) specifies a minimum monetary threshold for the availability of a jury trial. Prior to 1989, the statutory standard for determining the monetary threshold for a jury trial was the "amount in dispute." La. Acts 1989, No. 107, changed the standard to the amount of at least one "individual petitioner's cause of action."[1] The present case, *704 which involves a personal injury claim by a single individual plaintiff against his own uninsured/underinsured motorist (UM) insurance carrier, raises the issue of whether the amount plaintiff received in settlement from another insurer must be taken into consideration in determining the amount of his "cause of action" against the lone defendant in this suit at the time the right to jury trial is litigated.

Facts
After plaintiff was seriously injured in a rear-end collision, the tortfeasor's liability insurer paid its $100,000 policy limits, and plaintiff executed a settlement releasing his claims against the tortfeasor and the tortfeasor's insurer. Thereafter, plaintiff commenced this action against his own UM insurer, Allstate Insurance Company, to collect Allstate's $10,000 policy limits. In its answer, Allstate requested a jury trial.
At a June 3, 1999 status conference, the trial court, sua sponte, struck the jury demand, stating:
The Court struck the defendant's jury demand because [the tortfeasor's insurer] has paid $100,000, and, thereafter, plaintiff has stipulated that his remaining demand is for the $10,000 uninsured/underinsured motorist limits afforded by the Allstate policy which, accordingly, deems the amount in dispute to be $10,000. (emphasis added).
The Court of Appeal for the Fifth Circuit denied defendant's application for supervisory writs, stating:
On the showing made we see no error in the trial court ruling striking the defendant's jury demand where defendant's liability is limited to the $10,000 limits of the policy and plaintiff is seeking no more than that. See Thibert v. Smith, 560 So.2d 553 (La.App. 1st Cir.1990); Deterville v. Impastato, 539 So.2d 1013 (La.App. 4th Cir.1989).
This court granted defendant's application for certiorari and remanded the case to the intermediate court for briefing, argument and opinion. 99-2665 (La.11/19/99), 749 So.2d 660.
On remand, the Fifth Circuit again affirmed the trial court's decision to strike the jury demand. In so doing, the Fifth Circuit declined to follow the Fourth Circuit's recent decision in Hurst v. Louitt, 99-1120 (La.App. 4th Cir.9/24/99), 745 So.2d 687, which held that the Legislature's selection of the phrase "petitioner's cause of action" was intended to mean "the total recovery the plaintiff expects to receive, including pre-trial settlements and tenders." The Fifth Circuit distinguished the present case factually from Hurst, noting that Hurst involved a suit originally filed against several defendants (some of whom settled prior to trial) asserting a claim in excess of $50,000, while the present case from the outset has been against only one defendant and has never involved a claim for over $50,000. An additional distinction was that the UM policy limits in Hurst were $100,000, while the plaintiff's recovery in the present case is limited to a fixed amount of the policy limits of $10,000. Finally, the Fifth Circuit opined that the two cases cited in its earlier writ denial were still "good law" and were not affected by the 1989 amendment to La.Code Civ. Proc. art. 1732(1). In effect, the Fifth Circuit held that amounts received by a petitioner in settlement are not considered in calculating whether at least one "individual petitioner's cause of action exceeds" the monetary threshold.
We granted defendant's application for certiorari to resolve this conflict between the Fourth and Fifth Circuits. 99-2559 *705 (La.1/7/00), 758 So.2d 143. See La. S.Ct.R. X § 1(a)(1).

Applicable Statutes
The statutory source of the right to a jury trial in civil cases is La.Code Civ. Proc. art. 1731 A, which provides:
Except as limited by Article 1732, the right of trial by jury is recognized.
La.Code Civ. Proc. art. 1732, as presently written, provides several limitations on the right to a jury trial, including a monetary limitation setting (in negative terms) the statutory minimum dollar amount, as follows:
A trial by jury shall not be available in:
(1) A suit where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs.
The statutory language "must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10. In determining the purpose for the Legislature's use of the phrase "individual petitioner's cause of action" in the present statutory standard, we analyze the various legislative amendments that have both increased the monetary threshold for jury trials and reworded the statutory standard.

History of Article 1732(1)
When the Code of Civil Procedure was adopted in 1960, La.Code Civ. Proc. art. 1733(1) (1963) denied a jury trial, based on a monetary threshold, in "[a] suit demanding less than one thousand dollars exclusive of interest and costs." By La. Acts 1983, No. 534, the Legislature made three changes: (1) the enumeration of cases in which a jury trial is unavailable was moved to Article 1732(1); (2) the statutory standard for determining the monetary threshold for a jury trial was changed from "suit demanding" to "amount in dispute is"; and (3) the monetary threshold was increased to $5,000.[2] Revision Comment (b) to the 1983 amendment, which was proposed by the Louisiana State Law Institute, stated:
This increase [in the monetary threshold] is appropriate in the light of the increasing cost of jury trials and is in keeping with the expanded jurisdiction of city courts and parish courts in which there is no right to a jury trial. See Arts. 4842, 4843, and 4871. In addition, the phrase "amount in dispute" is used to emphasize that it is the amount demanded in good faith by the plaintiff which shall determine whether there is a right to a trial by jury and not simply the amount of plaintiff's demand. See Arts. 4 and 4841 and cases decided thereunder.
This court discussed the 1983 amendment in Cambridge Corner Corp. v. Menard, 525 So.2d 527 (La.1988). In Cambridge Corner, the plaintiff filed suit for accelerated rent and other items totaling $10,074, plus attorney fees. At the time suit was filed, the monetary threshold for a jury trial was $10,000, and the defendant demanded a jury trial. The plaintiff then amended its petition to reduce the amount demanded to $8,698, plus attorney fees, and later moved to dismiss the jury. This court held that the right to a jury trial does not depend on the amount initially demanded, but depends on the amount over which a good faith dispute presently exists. This court noted that the amount initially demanded, even if good faith, may be changed if the parties become aware during the discovery and preparation for trial that the value of the claim is actually worth more or less than originally demanded, or if part of the claim is settled before trial.[3]
*706 The gravamen of the Cambridge Corner decision was that the right to a jury trial is determined by the value of the good faith demand of the plaintiff, measured at the time that the right to jury trial is litigated and not necessarily at the time of the occurrence or transaction or at the time of the filing of the original petition.
By La. Acts 1989, No. 107, the Legislature reworded the statutory standard for the monetary threshold for the availability of a jury trial from "the amount in dispute does not exceed" to "the amount of no individual petitioner's cause of action exceeds." The amendment was not one that was proposed by the Louisiana State Law Institute, and there was no revision comment explaining the purpose of the amendment. It is now this court's task to determine that purpose.

Interpretation of the 1989 Amendment
La. Acts 1989, No. 107, began as a Senate bill that simply prohibited a trial by jury in "[a] suit where the amount of the cause of action does not exceed twenty thousand dollars[4] exclusive of interest and costs." In Senate Committee, the bill was amended to delete the words "the cause of action does not exceed" and to substitute the words "no individual petitioner's cause of action exceeds." At the Committee meeting, the author of the original bill explained that the present law denies a jury trial where the amount in dispute does not exceed $20,000 and that "the intent [of the original bill] is that a person who has a claim of more than $20,000 would be entitled to a jury trial, and if the claim is less than that, he would not be entitled to a jury trial." The senator who offered the Committee amendment then explained the amendment was to clarify that a jury trial is unavailable if no individual petitioner's cause of action exceeds $20,000.
One purpose of the 1989 legislation, which is very evident from the insertion of the words "individual petitioner," was to clarify that the monetary threshold cannot be satisfied by the joinder of two or more plaintiffs in the same suit, although La. Code Civ. Proc. art. 463 might authorize that joinder under the specified conditions. The amendment clearly requires that the unjoined cause of action of at least one individual plaintiff must be valued above the minimum amount.
The more difficult issue is the determination of the purpose of the use of the phrase "cause of action." That phrase has caused considerable difficulty in judicial interpretation over the years, especially when issues of prescription or res judicata were involved. See, e.g., Mitchell v. Bertolla, 340 So.2d 287 (La.1976).
Although the Code of Civil Procedure does not define "cause of action," the jurisprudence has offered several consistent definitions. In Trahan v. Liberty Mut. Ins. Co., 314 So.2d 350, 353 n. 4 (La.1975), this court defined cause of action, in the context of an issue of interruption of prescription,[5] as "[t]he juridical facts which constitute the basis of the right," "[t]he immediate basis of the right which the party seeks to exercise," and "[t]hat which serves as a basis for demand." Under these definitions, the term "cause of action" focuses on the conduct of the particular defendant in the occurrence or transaction which gives rise to the plaintiffs demand.
In Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La. 1993), this court stated that the term "cause of action," as used in the context of the peremptory exception of no cause of action, means "the operative facts which give rise to the plaintiffs right to judicially assert the action against the defendant."
*707 The case of Bullock v. Graham, 96-0711 (La.11/1/96), 681 So.2d 1248, was decided after the 1989 amendment to Article 1731(1). In Bullock, the sole plaintiff in the personal injury action alleged by amended petition that the amount in controversy did not exceed $20,000 (the monetary threshold for a jury trial at the time). The sole defendant (and its insurer) made the same stipulation by amended answer. The trial court determined that the plaintiff was entitled to $20,000 in general damages and $8,289 in special damages, or total damages of $28,289, subject to a reduction of forty percent for contributory negligence. The court therefore rendered judgment in the amount of $16,973 (total damages of $28,289 reduced by forty percent). On appeal, the intermediate court reduced the judgment to $12,000, calculated by viewing the amount in controversy as $20,000 and then reducing that amount by forty percent. 95-1050 (La.App. 1st Cir.2/23/96), 670 So.2d 806.
This court, in affirming the intermediate court in a four-to-three decision, discussed the confusion caused by use of differing terminology. While Article 1732(1) refers to "cause of action," the parties stipulated to the "amount in controversy." With little discussion, this court concluded that "the terms are synonymous as used in this case." Id. at 1250. Further reasoning that the plaintiff alleged freedom from fault and stipulated that the "amount in controversy" did not exceed $20,000, this court concluded that the most the plaintiff could receive, if free from fault, was $20,000, which must be reduced because the plaintiff was partially at fault. The court analogized the issue to the determination of federal diversity jurisdiction, in which the amount of the plaintiff's demand in the original complaint controls.
On reconsideration, we repudiate that part of the Bullock decision which states that the term "cause of action" in Article 1732(1) is synonymous with the term "amount in controversy."[6] The 1989 amendment changed the term "amount in dispute" (which is synonymous to "amount in controversy") to "cause of action." The terms obviously do not have the same meaning, and the Legislature probably intended some change.[7]
In the present case, Allstate contends that the Legislature used the term "cause of action" in order to base the determination of the monetary threshold on the plaintiff's entire claim arising out of the transaction or occurrence. On the other hand, plaintiff contends that the term was used to base the determination on the plaintiff's claim against the particular defendant before the court at the time the right to a jury trial is litigated.
The Legislature did not place a time frame in Article 1732(1) for determining the "petitioner's cause of action." However, the problem in this casewhether amounts received in settlement must be considered in the determination of the monetary threshold for jury trialsexisted when the standard was "amount in dispute," and the legislative substitution of the term "cause of action" did little to clarify a resolution of the problem.
In judicially resolving the problem, we first note the overall legislative trends (1) to restrict, rather than expand, the right to jury trials; (2) to expand the jurisdiction of courts of limited jurisdiction in which *708 there is no right to trial by jury;[8] and (3) generally to limit the availability of the more costly methods of litigating claims and to encourage more efficient methods, such as summary judgment.[9] It would undermine the overall scheme of the Code of Civil Procedure if we interpreted the legislative intent of the 1989 amendment as adopting an entirely different and broader concept by expanding the availability of jury trials, and we conclude that the Legislature did not intend such a result.
In light of the legislative intent to restrict jury trial, we interpret the language change in the 1989 amendment as intended to focus, not on the amount of the plaintiff's overall claim arising out of the transaction or occurrence, as defendant urges, but on the value of the plaintiffs cause of action against the defendant or defendants who are before the court at the time the right to a jury trial is litigated.
This interpretation is consistent with the jurisprudential expressions regarding the term "cause of action," which place the focus on the defendant rather than on the plaintiff. This focus on the defendant is also recognized in La.Code Civ. Proc. art. 927, which authorizes a particular defendant to use an exception of no cause of action to challenge whether the law provides a remedy against the particular defendant, while the exception of no right of action in the same article is used to challenge the right of the particular plaintiff to bring the suit.
Focusing on the particular defendant before the court in the present case, we note that plaintiffs cause of action against Allstate was based not only on the accident that gave rise to plaintiffs claim against the tortfeasor and his liability insurer, but also on the essential additional fact that Allstate issued UM coverage to plaintiff and agreed to pay damages when the tortfeasor was uninsured or underinsured. Thus, the amount of plaintiffs cause of action against Allstate, which was a separate cause of action from the cause of action against the tortfeasor and his liability insurer, was never over $10,000, either at the time of the accident, at the time of filing suit, or at the time the right to trial by jury was litigated. Indeed, plaintiff had no cause of action against Allstate to recover any amount greater than Allstate's $10,000 limits of liability.
Accordingly, we conclude that the amounts received by plaintiff in settlement or payment from persons against whom plaintiff has a separate cause of action are not to be considered in determining the amount of plaintiffs cause of action against the defendant presently before the court. In reaching this conclusion, we recognize that this issue will be presented in only a limited number of cases, such as in the present case (and the Hurst case) against a UM carrier after the tortfeasor has settled or paid some amount. Another example was potentially presented in Cambridge Corner Corp. v. Menard, 525 So.2d 527 (La.1988), in which the lessor's claim for unpaid rent exceeded the monetary threshold for a jury trial, but was reduced after suit was filed. (The reduction was a voluntary remission by plaintiff of part of the claim in order to avoid a jury trial, but the same issue would have been presented if the reduction in the claim had resulted from a partial payment or settlement by the defendant of part of the claim.)[10]
*709 In the more frequently occurring tort case where a tort victim's suit is against two defendants whose concurrent conduct gave rise to one cause of action for damages, and one of the defendants settles prior to trial, the amount of the plaintiff's cause of action for damages against the remaining defendant remains the same, because the remaining defendant may be found by the trier of fact to be one hundred percent at fault. If the right to a jury trial is litigated, the trial judge, in determining the amount of the plaintiff's cause of action, is not in a position to assess degrees of fault prior to trial.[11]
In the present case, we conclude that the amount of the plaintiff's cause of action against his UM carrier is $10,000. The lower courts thus correctly struck the insurer's demand for a jury trial.

Decree
For the foregoing reasons, the judgment of the court of appeal is affirmed.
NOTES
[1] Because La.Code Civ. Proc. art. 1732 provides the situations in which a jury trial is not available, there is an awkward double negative in the statement of the monetary threshold, which prohibits a jury trial in "[a] suit where no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs." That threshold clearly makes a jury unavailable unless the amount of at least one individual petitioner's cause of action exceeds $50,000.
[2] By La. Acts 1984, No. 301, La. Acts 1987, No. 766, and La. Acts 1993, No. 661, the Legislature again increased the monetary threshold, raising it first to $10,000, then to $20,000, and finally to the current level of $50,000.
[3] Because the amount demanded in the supplemental petition, when added to the contractual attorney fees, was more than the threshold amount at the time, a jury trial was ordered.
[4] The monetary threshold was increased in 1993, as noted above, to $50,000.
[5] At the time, La.Rev.Stat. 9:5801 provided that "[a]ll prescriptions affecting the cause of action therein sued upon are interrupted...."
[6] We do not overrule the Bullock decision, but merely disagree with some language that was not determinative of the outcome. The parties might have stipulated that the "cause of action" did not exceed $20,000, and the court would still have been faced with the issue of determining whether that limitation applied before or after the reduction of damages because of contributory negligence.
[7] The explanation by the author of the bill that "the intent is that a person who has a claim of more than $20,000 would be entitled to a jury trial, and if the claim is less than that, he would not be entitled to a jury trial," does not suggest any intent to change. (emphasis added).
[8] The jurisdictional threshold in these courts is based on the "amount in dispute." See La.Code Civ. Proc. arts. 4842, 4843.
[9] See La.Code Civ. Proc. art. 966 A(2) ("The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.")
[10] A similar rationale was applied to a claim for unpaid wages in Pinion v. Union Carbide Corp., 490 So.2d 479 (La.App. 4th Cir.1986), a case noted in Cambridge Corner Corp. v. Menard, 525 So.2d 527 (La.1988). In Pinion, the amount in dispute was decreased as a result of the trial judge's granting a directed verdict dismissing part of the plaintiff's claims for unpaid wages, and the judge then dismissed the jury since the remaining amount in dispute was below the then minimum threshold amount.
[11] The tort case of Bullock v. Graham, 96-0711 (La.11/1/96), 681 So.2d 1248, presented a one-defendant situation in which the plaintiff voluntarily remitted part of his single cause of action in order to preclude a jury trial. The problem arose after trial as to the manner of handling the percentage of contributory negligence. Similarly, when there are two tort defendants and one settles prior to trial, the plaintiff's "cause of action" is not reduced, because the allocation of fault between the two alleged tortfeasors does not occur until the conclusion of the trial.