822 So.2d 675 (2002)
Rose M. GUIDRY and Norman J. Guidry
v.
MILLERS CASUALTY INSURANCE COMPANY, Allstate Insurance Company, and Denise Pharagood
No. 2001 CA 0001.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
*678 Leslie J. Clement, Jr., Thibodaux, for Plaintiffs-Appellees Rose M. and Norman J. Guidry.
Michael G. Gee, Porteous, Hainkel, Johnson & Sarpy, L.L.P., Thibodaux, for Defendant-Appellant Allstate Insurance Company.
Before: CARTER, C.J., PARRO and CLAIBORNE,[1] JJ.
PARRO, J.
In this personal injury action, the general damages and penalty awards resulting from a prior jury trial were increased by the trial court after a new trial. The plaintiffs' uninsured/underinsured motorist insurer now appeals that judgment. For the following reasons, the judgment is amended and, as amended, affirmed.

Facts and Procedural History
Rose M. Guidry (Guidry) was injured when the vehicle she was driving on April 2, 1997, was broad-sided by a vehicle that was driven by Denise Pharagood (Pharagood) at the intersection of Louisiana Highway 1 and Canal Boulevard in Thibodaux, Louisiana. Pharagood was covered by a policy of liability insurance issued by Millers Casualty Insurance Company (Millers) with a liability limit of $10,000. Guidry and her husband filed suit against Pharagood, Millers, and Allstate Insurance Company (Allstate), in its capacity as their uninsured/underinsured motorist (UM) and medical payments insurer, seeking damages for the injuries and loss of consortium sustained as a result of this accident. On October 5, 1998, Millers tendered its $10,000 policy limit to the Guidrys in exchange for a release of any further liability as to Millers and Pharagood. Proof of this settlement was forwarded by Guidry to Allstate along with copies of Guidry's medical records and expenses. By letter dated October 9, 1998, *679 Guidry demanded that Allstate make a reasonable tender pursuant to her UM coverage. Later that same month by letter dated October 23, Guidry demanded payment of itemized medical expenses pursuant to her medical payments coverage. By separate checks dated January 12, 1999, Allstate paid Guidry the full amount of her medical payments coverage ($5,000) and tendered an additional $5,000 under her UM coverage.
This matter proceeded to trial by a jury against Allstate on the sole issue of damages. The Guidrys sought additional monies under their UM coverage, as well as penalties and attorney fees under LSA-R.S. 22:658(B)(1) on account of Allstate's failure to remit payment of medical expenses and to make a reasonable UM tender within 30 days after receipt of satisfactory proof of loss and demand for payment by them. The jury made the following awards to Guidry on account of the injuries and damages caused by Pharagood:

$15,000.00 pain and suffering and mental anguish
$ 5,000.00 disability
$ 7,712.48 past medical expenses
$ 1,000.00 future medical expenses
$ 7,178.12 attorney fees

In addition to these awards, the trial court's judgment contained an award of $1,871.24[2] in penalties based on the jury's finding that Allstate was arbitrary and capricious or without probable cause in failing to timely pay or tender a reasonable amount to the Guidrys for their claims for damages under the UM coverage provision of their policy and for medical benefits under the medical payments provision of their policy.
Subsequently, the Guidrys filed a motion for a judgment notwithstanding the verdict (JNOV) and, alternatively, a new trial or an additur. The trial court denied the Guidrys' motion for JNOV and an additur,[3] but granted a new trial as to the issue of damages.[4] In conjunction with the new trial, the Guidrys stipulated that neither of their claims exceeded $50,000, exclusive of interest and costs. Pursuant to this stipulation, the retrial was decided by the trial court, without objection by Allstate, based on the evidence previously presented to the jury. The trial court determined that Guidry[5] was entitled to $50,000 in general damages and $7,712.48 in past medical expenses, subject to a $50,000 monetary cap pursuant to the stipulation of counsel, which arguably deprived Allstate of its right to have this matter retried by a jury. The trial court also determined that Guidry's $50,000 award was subject to further reduction of $10,000 for the settlement payment by Millers and $10,000 for the amounts tendered by Allstate. Accordingly, Allstate was ordered to pay $30,000 in damages, plus $4,000 in penalties, $7,178.12 in attorney fees, and costs. From a judgment to that effect, Allstate appealed and contended the trial court erred in granting the Guidrys a new trial, the trial court miscalculated the penalty award, and the Guidrys' total recovery, inclusive of penalties *680 and attorney fees, should have been limited to $50,000, subject to reduction for amounts received in settlement and as a tender. Alternatively, Allstate contends that the new trial should have been before a jury. The Guidrys have answered Allstate's appeal seeking additional attorney fees for legal services rendered in conjunction with this appeal.

Granting of a Motion for New Trial
The Louisiana Code of Civil Procedure provides a procedure for additur or remittitur of the verdict or judgment in cases tried before a jury when the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only. See LSA-C.C.P. art. 1814. This procedure is connected with the procedures concerning new trials. Miller v. Chicago Insurance Company, 320 So.2d 134, 136 (La. 1975); see LSA-C.C.P. arts.1972, 1973. Under LSA-C.C.P. art.1972, a new trial shall be granted, upon contradictory motion of any party, when the verdict or judgment appears clearly contrary to the law and the evidence. In addition, a discretionary ground for a new trial is set forth in LSA-C.C.P. art.1973, which authorizes a trial court to grant a new trial in any case if there is good ground for it. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 492, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094.
The trial court's discretion in ruling on a motion for new trial is great, and its decision will not be disturbed on appeal absent an abuse of that discretion. Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84, 93. Although the granting of a motion for new trial rests within the wide discretion of the trial court, such discretionary power must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Davis v. Wal-Mart Stores, Inc., 774 So.2d at 93. Nonetheless, when the trial court is convinced by its examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered.[6]Davis v. Wal-Mart Stores, Inc., 774 So.2d at 93.
In ruling on the Guidrys' post-verdict motions, the trial court noted that Guidry suffered from preexisting degenerative joint disease or arthritis. As a result of the accident, she received treatment from a family doctor, neurologist, neurosurgeon, physical therapist, and chiropractor. Her treating neurologist felt that she had an aggravation of a preexisting condition. Despite a normal neurological exam, her treating neurosurgeon reported that Guidry sustained an aggravation of a preexisting lumbar spinal stenosis and degenerative change of the spine. He opined that surgery was not indicated. Based on this testimony, Allstate contends that Guidry sustained a soft-tissue aggravation to a preexisting condition for which she was adequately compensated by the jury *681 award. In support of this argument, Allstate asserts in its brief that Guidry's disc problems were apparently not causing her any pain. This assertion is not supported by the record and is in fact contradicted by the testimony of lay witnesses, as well as various medical experts.
Her treating chiropractor testified that she would most likely require symptomatic care for the remainder of her life whenever her condition worsened with changes in weather and physical activities. During the course of treating Guidry after the accident, her chiropractor observed that her condition worsened. In his opinion, her condition would continue to worsen as Guidry aged.[7] Her neurologist testified that Guidry was going to experience significant pain for a long period of time. According to her family physician and her neurosurgeon, Guidry would continue to have low back pain on a permanent basis for which she periodically would be required to seek treatment. Although Guidry had a preexisting condition, the record indicates that her symptoms of regular and persistent pain were triggered by the accident.
In ruling on the motion for new trial, the trial court noted that the injury and resulting pain had substantially affected Guidry's life and her level of activity. It observed that as a result of her injury, she suffered from chronic intractable pain for which there was no known medical remedy, and she was no longer able to do many of the things she used to be able to do. These factual findings are supported by the record. In making a $20,000 general damage award in favor of Guidry, we discern that the jury had also found the factual testimony to support such an award to be credible, resulting in the same or similar findings of fact as the trial court on retrial. Thus, we do not find that the trial court usurped the fact-finding role of the jury, but neither do we find that the jury's verdict in this case was contrary to the law and the evidence.
However, based on the evidence presented, the trial court further found that the jury's award for general damages, if allowed to stand, would result in a miscarriage of justice. In other words, the trial court found that the jury's general damage award of $20,000 was inadequate to compensate Guidry for her pain and suffering, mental anguish, and disability, such that the inadequacy of that award gave rise to a good ground for the granting of a new trial under LSA-C.C.P. art. 1973. After considering the entire record in this case, we are unable to find an abuse of discretion in the trial court's granting of a new trial with respect to the general damage award.[8]

New Trial by Judge or Jury
Allstate correctly notes that procedural maneuvers designed solely to deprive litigants of their right to a jury trial based on jurisdictional amounts are disfavored. See Bullock v. Graham, 96-0711 (La.11/1/96), 681 So.2d 1248, 1250, overruled in part on other grounds, Benoit v. Allstate Insurance Company, 00-0424 (La.11/28/00), 773 So.2d 702, 707. However, at no time prior to or at the retrial of this matter did Allstate object to proceeding with the bench trial. Accordingly, Allstate failed to preserve its potential right to trial by jury under LSA-C.C.P. art. *682 1732. See Pollet v. Louisiana Farm Bureau Casualty Insurance Company, 99-208 (La.App. 5th Cir.7/27/99), 751 So.2d 925, 926-927, writ denied, 99-2877 (La.12/10/99), 751 So.2d 857.
Furthermore, in conjunction with the retrial of this matter, the Guidrys stipulated that "no individual petitioner's cause of action exceeds $50,000, exclusive of interest and costs" in an effort to avoid a trial by jury. The record discloses that following the entry of the stipulation, counsel for the litigants seemingly agreed that the retrial of this matter would be by submission to the trial court on the evidence previously presented at the jury trial. See LSA-C.C.P. art.1978. Based on this agreement, we find that Allstate's argument that the new trial should have been a trial by jury lacks merit.

Effect of the $50,000 Stipulation
Based on the Guidrys' stipulation that "no individual petitioner's cause of action exceeds $50,000, exclusive of interest and costs," Allstate maintains that the most it could be liable to the Guidrys for general and special damages, penalties, and attorney fees is $30,000.[9]
Louisiana Code of Civil Procedure article 1732 provides, in pertinent part:
A trial by jury shall not be available in:
(1) A suit where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs.
By voluntarily limiting the amount of her recovery against Allstate to avoid a jury trial, Guidry remitted the portion of her claim which may have exceeded $50,000. See Bullock v. Graham, 681 So.2d at 1250; see also LSA-C.C.P. art. 5. Accordingly, the total liability of Allstate could not exceed the maximum recoverable amount, $50,000.
Louisiana Code of Civil Procedure article 1732(1) provides that a jury trial is not available where the amount of no individual petitioner's cause of action exceeds $50,000 "exclusive of interest and costs." Because the only items to be excluded from the calculation of the amount of a plaintiff's cause of action are interest and costs, we conclude that the attorney fees and penalties must be included.[10]See Cambridge Corner Corporation v. Menard, 525 So.2d 527, 530 (La.1988); see also Pinion v. Union Carbide Corporation, 490 So.2d 479, 481 (La.App. 4th Cir. 1986). Accordingly, Guidry's total recovery from Allstate, inclusive of penalties and attorney fees, would be limited to $50,000.[11] This conclusion is consistent with LSA-R.S. 13:4231, which mandates that all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation must be asserted simultaneously in order to avoid the defense of res judicata.[12]

*683 Determination of Monies Owed

The object of the uninsured motorist statute, LSA-R.S. 22:1406(D), is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). In order to recover from a UM insurer, there must first be a determination that the tortfeasor was liable for damages in an amount in excess of the tortfeasor's liability insurance policy limits. Butler v. Allen, 00-1726 (La.App. 1st Cir.9/28/01), 808 So.2d 746, 749, writ denied, 01-2924 (La.2/1/02), 808 So.2d 331. The UM insurer has no obligation to pay any portion of the damages suffered by an injured insured that are covered by the tortfeasor's liability insurance policy limits. Rather, the UM insurer is obligated to pay only those damages that exceed the policy limits of the motor vehicle liability insurance policy and that are within the UM policy limits. Rizer v. American Surety & Fidelity Insurance Company, 95-1200 (La.3/8/96), 669 So.2d 387, 390. Since UM coverage is excess coverage, Guidry in this case has a right to receive from her UM insurer only that portion of her medical expenses and general damages that exceeds the limits of the applicable liability insurance policy issued by Millers and that is within the UM policy limits. See Butler v. Allen, 808 So.2d at 749.
The amount already received by Guidry from Millers in settlement pursuant to the liability insurance policy is not to be given consideration in determining the amount of Guidry's "cause of action" against Allstate for purposes of LSA-C.C.P. art.1972. See Benoit v. Allstate Insurance Company, 773 So.2d at 708. However, by stating that no individual petitioner's cause of action exceeded $50,000, exclusive of interest and costs, Guidry limited the ultimate liability of Allstate to her to that amount. Nonetheless, such a stipulation under the facts of this case did not limit the determination of the total damages sustained by Guidry as a result of the negligence of Pharagood.[13] Thus, the total damages sustained as a result of Pharagood's negligence as found by the trial court will be the starting point in computing the monies owed by Allstate, subject to the limitation of Allstate's liability.
On the retrial of this matter, the trial court determined that Pharagood was liable for $57,712.48, consisting of $50,000 in general damages and $7,712.48 in past medical expenses.[14] This award clearly exceeds the $10,000 liability insurance policy limit. By virtue of its contract of insurance with Guidry, Allstate has no obligation to pay any portion of the damages suffered by Guidry that is covered by the liability insurance policy limit. Rather, Allstate is obligated to pay only those tort damages that exceed the limits of the liability insurance policy and that are within the UM policy limits, as well as within the liability cap of $50,000 stipulated to by Guidry. Pursuant to the stipulation, Guidry's *684 total recovery against Allstate, inclusive of attorney fees and penalties, could not exceed the maximum liability cap of $50,000. However, since UM coverage is excess coverage and Guidry's medical expenses and general damages exceeded the limit of the liability insurance policy by only $47,712.48, Allstate's maximum liability exposure of $50,000 in this case has not been reached. Therefore, the difference of $2,287.52 should be applied toward payment of the attorney fees.[15] From the $50,000 liability cap, Allstate is entitled to have the amounts previously tendered by it subtracted. Accordingly, Guidry's total recovery from Allstate after deduction of the $10,000 previously paid by Allstate is limited to $40,000.

Additional Attorney Fees
Guidry answered Allstate's appeal seeking additional attorney fees for the appeal. Additional attorney fees are usually awarded on appeal to an appellee when the appellant obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel, provided that the opposing party appropriately requests an increase. Loup v. Louisiana State School for the Deaf, 98-0329 (La.App. 1st Cir.2/19/99), 729 So.2d 689, 694; see Hayes v. Allstate Insurance Company, 99-1558 (La.App. 3rd Cir.3/1/00), 758 So.2d 900, 905, writ denied, 00-1587 (La.8/31/00), 766 So.2d 1280. In light of our findings on appeal, Guidry is not entitled to additional attorney fees for work conducted in association with the appeal.

Decree
For the foregoing reasons, the judgment of the trial court is amended to reduce Guidry's recovery of $41,178.12 from Allstate by $1,178.12 to reflect a total recovery of $40,000, plus interest. As amended, the judgment of the trial court is affirmed. Each party is assessed with half of the costs of this appeal.
AMENDED AND, AS AMENDED, AFFIRMED.
Carter, C.J., concurs.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] This amount represents ten percent of the difference between the amount paid or tendered by Millers and the amount the jury found to be due to Guidry for damages, excluding attorney fees.
[3] Allstate did not consent to an additur. See LSA-C.C.P. art. 1814.
[4] Allstate then sought a supervisory writ from this court, which was denied. Guidry v. Millers Casualty Insurance Company, 99-2107 (La.App. 1st Cir.2/10/00) (unpublished).
[5] As a matter of law, loss of consortium claims are derivative of the primary victim's injuries and must be satisfied out of the per person bodily injury limits of the insurance policy. Ferrell v. Fireman's Fund Insurance Co., 96-3028 (La.7/1/97), 696 So.2d 569, 576.
[6] On a motion for new trial or additur, the trial court can fairly and separately determine whether the amount of general damages is so inadequate as to require additur or a new trial. Miller v. Chicago Insurance Company, 320 So.2d at 139.
[7] Guidry was 66 years old when this accident occurred.
[8] Under the facts and circumstances of this case, by failing to agree to an additur, Allstate elected to submit to a new trial. See Miller v. Chicago Insurance Company, 320 So.2d at 136.
[9] This figure allegedly represents the $50,000 monetary limit stipulated to by the Guidrys, less the amounts received by the Guidrys ($10,000 from Millers and $10,000 from Allstate).
[10] If the legislature had intended for penalties and attorney fees to be excluded, it could have easily done so. Cf. LSA-C.C.P. art. 4841(B).
[11] Based on our conclusion and considering the fact that the trial court's $57,712.48 damage award and $7,178.12 attorney fee award in this case consumed Allstate's maximum liability exposure, we find it unnecessary to address the interesting question of whether the penal provisions of LSA-R.S. 22:658(B)(1), when strictly construed, allow for consideration of the untimely tender by Allstate in the calculation of penalties.
[12] A final judgment awarding the insured damages under UM coverage has been held to bar a subsequent suit by the insured seeking penalties for the insurer's handling of the same UM claim. See Spear v. Prudential Property and Casualty Insurance Company, 98-1663 (La.App. 4th Cir.1/13/99), 727 So.2d 640, 643.
[13] To find otherwise would automatically preclude recovery from a UM insurer that was the only defendant in a trial governed by the jurisdictional limit of LSA-C.C.P. art. 1732 and where the underlying liability insurance policy was $50,000 or greater. E.g., Benoit v. Allstate Insurance Company, 773 So.2d 702.
[14] The total tort damages does not include the award for penalties and attorney fees because these amounts were not legally owed by Pharagood as a result of her negligence.
[15] This sum for attorney fees will earn legal interest from the date of the trial court judgment until paid.