_[iLEON A. CANNIZZARO, JR., Judge.
This case arises out of an automobile accident. Continental Insurance Company, a defendant in this case, is appealing the trial court’s judgment in favor of Gloria McCarter, a plaintiff in this case. Mrs. McCarter is also appealing that part of the trial court’s judgment that makes her award subject to a credit for the amount already paid to Mrs. McCarter by another insurance company.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
Mrs. McCarter was driving her car in a safe and lawful manner, and her two minor children were passengers in the car. A car driven by Mary Sanchez struck Mrs. McCarter’s car from the rear, and as a result of the collision, Mrs. McCarter and *920 her children were injured. Mrs. McCarter testified at the trial that when her car was hit, “my legs went numb.” Thereafter, she began to suffer from unrelenting back pain and ultimately discovered that she had a slipped disk in her spine, which she attributed to the injuries she sustained in the accident involving Ms. Sanchez’s car. Additionally, Mrs. McCarter’s children were injured from being jolted when their mother’s ear was hit by Ms. Sanchez’s car.
|2Mrs. McCarter[1] sued Ms. Sanchez and Patterson Insurance Company, Ms. Sanchez’s insurer. Continental, Mrs. McCar-ter’s uninsured motorist carrier, was also sued. Ms. Sanchez and Patterson admitted liability in the case, and the claims against them were settled for $9,500[2]. After a trial on the merits, the trial court awarded Mrs. McCarter damages in the amount of $50,000 but made the award subject to a credit in the amount of $10,000.
Continental is appealing the award of damages on the ground that Mrs. McCar-ter’s back pain and slipped disk were the result of a pre-existing back problem rather than the accident involving Ms. Sanchez. Just sixteen days prior to the accident Mrs. McCarter had been released from the care of Dr. Frank Culicchia, the neurosurgeon who performed surgery to repair a slipped disk in Mrs. McCarter’s back approximately six weeks earlier. When Dr. Culicchia discharged Mrs. McCarter, he reported to Dr. Robert Miles, who was Mrs. McCarter’s primary care physician, that Mrs. McCarter had “no complaints of pain whatsoever” and wanted to return to her full duties at work. Dr. Culicchia further advised Dr. Miles that he had released her from his care and had “not placed any restrictions or limitations upon her.”
A few days after the accident, however, Mrs. McCarter returned to Dr. Culicchia. She told him that she had been involved in an automobile accident and that she had suffered from a return of the numbness that had affected her legs prior to the surgery that he had recently performed. Dr. Culicchia prescribed pain | ¡¡medication and advised Mrs. McCarter to return to his office if her condition did not improve.
Mrs. McCarter continued to have progressive back pain for approximately two and one half years before she again visited a physician. Mrs. McCarter, however, periodically consulted with Dr. Miles by telephone, and over the course of approximately two and one half years, he prescribed prescription strength ibuprofen for her more than twenty times by calling a pharmacy to have the prescriptions filled.
At the trial Mrs. McCarter explained her failure to visit a physician for approximately two and one half years after she last visited Dr. Culicchia. Mrs. McCarter testified that because she was the caregiver for her mother, who had terminal cancer, for a number of months after the accident, she would have been unable to have back surgery at that time. Additionally, she testified that because she had a high tolerance for pain and was afraid of surgery, she decided to manage her pain with medications and exercise. Mr. McCarter also testified at the trial that Mrs. McCarter had a high tolerance for pain.
*921 Eventually, Mrs. McCarter did return to see Dr. Miles, because her back pain continued to increase. Six months later Dr. Miles determined that Ms. McCarter should have an MRI[3] examination of her back, and the MRI showed that she had a recurrent slipped disk. Dr. Miles then referred Mrs. McCarter to Dr. John Lee Moss, who confirmed that she suffered from a recurrent slipped disk and who advised her to treat the disk problem conservatively with medication and exercise rather than surgically.
|4Mrs. McCarter claimed that there were no intervening acts that could have caused or contributed to her recurrent disk problem other than the accident. Alternatively, Continental claimed that there is no evidence that the accident caused Mrs. McCarter’s recurrent disk problem. The trial court held in favor of Mrs. McCarter and awarded her $50,000 in damages, subject to a $10,000 credit for money already paid by Ms. Sanchez’s insurer. Continental is appealing the trial court judgment, and Mrs. McCarter is appealing that portion of the judgment that made her award subject to the $10,000 credit.
DISCUSSION
Applicable Law
In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court discussed the scope of the appellate court’s review of a trial court’s findings of fact as follows:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong....
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
| Jd. at 844. See also Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Harvey v. Cole, 2000-1849 (La.App. 4 Cir. 1/23/02), 808 So.2d 771.
With respect to issues of law, however, this Court is required to determine whether the trial court applied the law appropriately. In Glass v. Alton Ochsner Medical Foundation, 2002-0412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405, writ denied, 2002-2977, 2002-3018 (La.3/14/03), 839 So.2d 36, 839 So.2d 37, this Court stated that “[t]he standard of review of appellate courts in reviewing a question of law is simply whether the court’s interpretative decision is legally correct.” Additionally, if a trial court’s decision is based on an erroneous application of the law, the decision is not entitled to deference by the appellate court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-1072 (La.1983). See also Sander v. Brousseau, 2000-0098, p. 4 (La.App. 4 Cir. 10/4/00), 772 So.2d 709, 711, where this Court stated that “[appellate review of a question of law involves a determination of whether the lower court’s interpretive decision is legally correct.”
*922 Assignments of Error
Continental has made seven assignments of error. Mrs. McCarter has made a single assignment of error.
Continental’s Assignment of Error No. 1: The trial court committed manifest error in applying the Housely presumption, because the facts of this matter do not warrant this application.
In Housley v. Cerise, 579 So.2d 973 (La.1991), the Louisiana Supreme Court, quoting Lucas v. Insurance Co. of North America, 342 So.2d 591, 596 (La.1977), stated that:
|fi[a] claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
579 So.2d at 980.
Continental argues that in order for Mrs. McCarter to fall within the scope of the Housley presumption, she had to show by a preponderance of the evidence (1) that she was in good health prior to the accident and (2) that the accident caused her recurrent slipped disk. In this case, the trial court judge found that Mrs. McCarter was entitled to the benefit of the Housley presumption, and we believe that he properly applied the law.
In his reasons for judgment the trial court judge stated that “[t]his operation [the surgery performed by Dr. Culicchia to repair Mrs. McCarter’s slipped disk] was apparently successful and her post-operative history is uneventful .and reflective of an excellent gradual recovery without pain or complaints, such that in six weeks ... she was discharged to return to full time employment.” We do not find this factual finding to be either manifestly erroneous or clearly wrong. There is sufficient evidence in the record to support the trial judge’s findings. When Dr. Culicchia discharged Mrs. McCarter and approved her return to work, he found that she had no complaints of pain and that she could return to work without any limitations or restrictions on her activities. Therefore, it was not unreasonable for the trial court to conclude that she was in good health when she was involved in the accident with Ms. Sanchez two weeks later.
|7The trial court judge also found .that the accident was the cause of Mrs. McCarter’s recurrent slipped disk. In his reasons for judgment, the trial court judge stated that the “[defendant has done a credible job of producing medical opinions that the time lapse of medical intervention meant the cause of her problems had nothing to so [sic] with this accident, and could be just a recurrent problem.” (Emphasis in the original.) The trial court judge weighed the evidence presented by Mrs. McCarter and the evidence presented by Continental. In weighing the evidence, however, the trial court judge determined that the evidence presented by Mrs. McCarter should be given greater weight. The trial court judge found, and stated in his reasons for judgment, that “[s]he was doing well without pain and with excellent motion through and after her discharge by Dr. Culicchia” and that “[i]t was only because of the numbness after the accident that she returned to Dr. Culicchia and the substantive changes in her back became evident.” (Emphasis in the original.)
We cannot say that the trial court judge’s factual findings regarding the cause of the recurrent slipped disk were either manifestly erroneous or clearly wrong. Mrs. McCarter testified that at the moment of the impact in the accident, her legs suddenly became numb. The trial court judge obviously believed that Mrs. *923 McCarter was a credible witness, and we cannot say that he was not entitled to rely on her testimony.
In Johnson v. Insurance Co. of North America, 454 So.2d 1113 (La.1984), the Louisiana Supreme Court stated that “[i]n evaluating evidence, the trier of fact should accept as true the uncontradicted testimony of a plaintiff witness, absent a sound reason for its rejection.” 454 So.2d at 1117. Mrs. McCarter testified that she was in good health immediately prior to the accident, that at the moment Ms. IsSanchez’s car hit hers, she felt numbness in her legs, and that thereafter she suffered from chronic, progressively worsening back pain. This testimony was uncon-tradicted, and, in fact, it was bolstered by Mr. McCarter’s testimony regarding the progression of his wife’s back pain and by Dr. Miles’ testimony regarding the medication that he prescribed to Mrs. McCar-ter for months after the accident. Therefore, we will not reverse the trial court judge’s finding that the accident caused Mrs. McCarter’s recurrent disk problem.
We find that Mrs. McCarter is entitled to the benefit of the presumption articulated in Housley. We will not reverse the trial court judge’s factual findings regarding the health of Mrs. McCarter prior to the accident or regarding the cause of Mrs. McCarter’s recurrent slipped disk.
Continental’s Assignment of Error No. 2: The trial court committed manifest error by finding, based upon Dr. Robert Miles’ testimony, that the 1997 accident was the cause of plaintiff/appellee’s recurring herniation and current pain, despite Dr. Miles’ testimony that he did not know the cause of her pain complaints.
The testimony at the trial established that Dr. Culicchia had released Mrs. McCarter from his care prior to the accident. He had found her to be without pain and able to return to her full range of activities. According to Mrs. McCarter’s uncontradicted testimony, she was free of pain after she was released from Dr. Cu-licchia’s care, and her symptoms began immediately after the accident and continuously manifested themselves afterward. Dr. Miles did not state that Mrs. McCar-ter’s recurrent disk problem was caused by the accident, but he prescribed prescription strength ibuprofen for her back pain for months, and she was in contact with him by telephone during that time period. Ultimately, Mrs. McCarter was diagnosed with a recurrent slipped disk in her back.
|9We cannot say that the trial court was manifestly erroneous or clearly wrong in determining that Mrs. McCarter suffered an injury in the accident that caused the recurrent slipped disk. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), where the Supreme Court stated that “[wjhere there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.”
There was medical evidence presented to the trial court from which the trial court judge could conclude that there was a reasonable possibility that the accident caused the recurrent slipped disk. Therefore, using the applicable standard of review, we find this assignment of error to be without merit.
Continental’s Assignments of Error Nos. 3, 4, 5, and 6: In these four assignments of error, Continental asserts that the trial court committed manifest error in not relying on the testimony of Dr. Sax-man Kewalramani, Dr. Frank Culicchia, Dr. J. Lee Moss, and Dr. James Butler, all of whom testified that the accident with Ms. Sanchez’s car was not the cause of plaintiff/appellee’s reoccurring herniation.
In his reasons for judgment, the trial court judge made it clear that he did *924 consider the medical evidence presented by Continental. He even stated that “[w]hile this Court respects the opinions of Dr. Butler and Dr. Bartholomew, they examined plaintiff only after the fact....” The trial court judge then stated that he was going to rely on the opinion of Dr. Miles, “who as the treating physician was aware of her condition the entire time.” Dr. Miles testified that it was his opinion that Mrs. McCarter was taking the medication he prescribed, because she had back pain, and the trial court judge gave this testimony great weight.
Where there are two permissible views of the evidence, the trial court’s decision to rely on one of the two views cannot be manifestly erroneous or clearly wrong. Id. In the instant case, we find that there are, in fact, two permissible views hnof the evidence. One view is that Mrs. McCarter’s recurrent slipped disk and the continuous, progressive pain that she suffered after the accident were caused by the accident. The other view is that Mrs. McCarter’s pain was simply a continuation of her previous back problems. The trial court judge chose to rely on the evidence supporting the first view. This reliance was neither manifestly erroneous nor clearly wrong, and these assignments of error are without merit.
Continental’s Assignment of Error No. 7: The damages award made to plaintiff/appellee is excessive in light of the settlement with Patterson Insurance Company, her treatment, and her reported medical bills.
In Duncan v. Kansas City Southern Railway Co., 2000-0066 (La.10/30/00), 773 So.2d 670, the Louisiána Supreme Court stated as follows:
General damages are those which may not be fixed with pecuniary exactitude; instead, they “involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms.” Vast discretion is accorded the trier of fact in fixing general damage awards. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.
2000-0066, p. 13, 773 So.2d at 682 (emphasis added and citations omitted). See also Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
In the instant case we do not find that the trial court judge abused his vast discretion is assessing damages. Mrs. McCarter, Mr. McCarter, and Dr. Miles all testified that Mrs. McCarter had a high tolerance for pain. Even so, she took prescription strength ibuprofen for months, and the pain worsened to the point that despite her fear of doctors and surgery, she returned to Dr. Miles for the purpose of obtaining additional pain relief. An MRI confirmed that she had a recurrent slipped | n disk, which accounted for her severe pain. We find that the amount of damages awarded is reasonable.
Mrs. McCarter’s Assignment of Error: The trial court manifestly erred when it subjected Gloria McCarter’s damage award to a credit of ten thousand dollars.
Approximately eight months after Ms. Sanchez and her insurer had been dismissed from this case, Mrs. McCarter and her husband filed a stipulation that their damages did not exceed $50,000. Mrs. McCarter is now arguing that the stipulated amount applied only to Conti *925 nental and not to the total amount of damages. Therefore, Mrs. McCarter claims that the trial court judge should not have made her damage award subject to a $10,000 credit for the amount Ms. Sanchez’s insurer paid to her. Continental, however, argues that the stipulation applied to the total amount of the damages and that the credit was appropriate.
Mrs. McCarter contends that the only reason for the stipulation of damages was that she did not want a jury trial. By limiting her claim to $50,000, under the provisions of La. C.C.P. art. 1732(1), Continental could not provoke a jury trial. La. C.C.P. art. 1732 provides that a jury trial is not available in “[a] suit where the amount of no individual petitioner’s cause of action exceeds fifty thousand dollars exclusive of interests and costs.”
In Benoit v. Allstate Insurance Co., 2000-0424 (La.11/28/00), 773 So.2d 702, the Louisiana Supreme Court discussed article 1732 as follows:
[W]e interpret the language change in the 1989 amendment [to article 1732] as intended to focus, not on the amount of the plaintiffs overall claim arising out of the transaction or occurrence ... but on the value of the plaintiffs cause of action against the defendant or defendants who are before the court at the time the right to a jury trial is litigated.
| ^Accordingly, we conclude that the amounts received by the plaintiff in settlement or payment from persons against whom the plaintiff has a separate cause of action are not to be included in determining the amount of plaintiffs cause of action against the defendant presently before the court .... this issue will be presented in only a limited number of cases, such as in the present case ... against a UM carrier after the tortfeasor has settled or paid some amount.
2000-0424, pp 10-11, 773 So.2d at 708.
Had Mrs. McCarter’s original stipulation been the only stipulation in the record, under the Benoit case, the $10,000 credit that was given would have been in error. In the instant case, however, Mrs. McCar-ter’s attorney made the following statement on the record at the beginning of the trial:
Plaintiffs agree that damages don’t exceed fifty thousand dollars. Plaintiffs have received $9,500 from Patterson Insurance Company, therefore they get a credit for $10,000 based upon the full value of the Patterson Insurance Company policy. Is that correct?
(Emphasis added.) The trial counsel for Continental replied that that was correct, and Mrs. McCarter’s attorney made no objection.
Mrs. McCarter’s attorney expressly stipulated on the record at trial that the damages owed by Continental would be subject to a $10,000 credit. Therefore, the prior, unqualified stipulation was superceded by this clarification of Mrs. McCarter’s intent in making the stipulation.
In D’Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600 (La.1983), the Louisiana Supreme Court discussed stipulations as follows:
A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. Such agreements are the law of the case.
11R 444 So.2d at 601 (citations and footnotes omitted). See also, e.g., Johnson v. T & LNAS/Domino Sugar, 2003-0058, p. 5 (La.App. 4 Cir. 8/20/03), 854 So.2d 985, 987; *926 Norman v. Norman, 99-2750, 99-2751 (La.App. 4 Cir. 7/12/00), 775 So.2d 18, 26.
We do not find that the stipulation made at the trial in this case was in derogation of the law. Therefore, we must affirm the $10,000 credit granted by the trial court judge.
CONCLUSION
We find that the trial court’s judgment was neither manifestly erroneous nor clearly wrong in his factual findings and that the trial court judge properly applied the law in this case. The judgment of the trial court is hereby affirmed.
AFFIRMED.

. Mrs. McCarter and her husband, individually and on behalf of their minor daughters, were the original plaintiffs in this matter. Mr. McCarter ultimately waived his claims for loss of consortium.

. The Patterson insurance policy had a policy limit of $10,000.

. MRI is an acronym for magnetic resonance imaging, a radiological procedure that can produce a two-dimensional view of the spinal cord.